Ronald ENQUIST, et al., Plaintiffs,

v.

The QUAKER OATS COMPANY, a corporation, and Emil J. Petranek, Jr., Defendants.

Civ. No. 71–0–144.

United States District Court, D. Nebraska.

May 6, 1971.

Charles A. Nanfito, of Nanfito & Nanfito, Omaha, Neb., for plaintiffs.

Leo Eisenstatt, of Eisenstatt, Higgins, Kinnamon & Green, Omaha, Neb., for defendants.

MEMORANDUM AND ORDER

DENNEY, District Judge.

This matter comes before the Court on the motion of defendant to dismiss the complaint [Filing 4]. Oral arguments have been heard and briefs have been submitted on behalf of both parties.

In their complaint, plaintiffs allege that defendant has discharged and continues to discharge refuse into the Missouri River and that such discharge violates the provisions of two statutes, namely, Section 13 of the Rivers and Harbors Act, 1899, commonly known as the Refuse Act [30 Stat. 1152, 33 U.S. C.A. § 407], and the Water Quality Improvement Act of 1970 [84 Stat. 91, 33 U.S.C.A. § 1151, et seq.].

The plaintiffs classify their action as "Qui Tam * * * a civil action" and seek $1,500,000 in penalties and that defendants cease and desist from further polluting. The monetary relief sought is based on that part of 33 U.S.C. § 411

which provides for the payment of one-half of the fine assessed a person convicted under § 407 "to be paid to the person or persons giving information which shall lead to conviction."

Historically, qui tam actions have been based on a particular statute giving the common informer a right to share in the penalty. Statutes providing for a share in the penalty may be classified as basically one of two types: (a) the statute gives the informer a right to share in the penalty and that right goes to the person who shall first give information and prosecute, or (b) the statute gives the informer a right to share in the penalty, but is silent as to whether the informer may prosecute in his own name and in separate section directs that some governmental official or agency is charged with the enforcement and prosecution of the statute. Qui tam actions have been allowed under statutes of the former type but not under statutes of the latter. The Refuse Act is of the latter variety.

Plaintiff's strongest authority for maintenance of this action is found in the dictum of Justice Black in U. S. ex rel. Marcus v. Hess, 317 U.S. 537, 63 S. Ct. 379, 87 L.Ed. 443 [1943], where he stated that:

Statutes providing for a reward to informers which do not specifically either authorize or forbid the informer to institute the action are construed to authorize him to sue.

This dictum has been criticized recently in Bass Angler Sportsman's Society of America v. U. S. Plywood-Champion Papers Inc., 324 F.Supp. 302 [S.D.Tex., 1971]. The court in that case, stated that Justice Black's dictum appears to state the law too broadly and particularly so whenever the statute's language by necessary implication precludes such a conclusion. An early case similar to this action is Drew v. Hilliker, 56 Vt. 641 [1884], wherein the court stated: "It is settled law that an informer can in no case sue in his own name to recover a forfeiture given in part to him, unless the right to sue is accorded by the statute

raising the forfeiture." Further authority for this proposition is found in Williams v. Wells Fargo & Co. Express, 177 F. 352 [8th Cir. 1910], where the court examined an analogous postal law and said that:

The question is one of procedure in the federal courts * * * and as it [the postal law] in express terms commands that all such suits shall be brought "in the name of the United States" * * * and the lawmaking power in its wisdom, deemed wise that the lawfully constituted authorities of the government should act on their official responsibility in cases of violation * * * as would seem to be indicated by the terms of the section quoted.

Here, in the Refuse Act, the legislature has also indicated its intent by committing enforcement powers to the Department of Justice by, in express terms, providing that in § 413 "The Department of Justice shall conduct the legal proceeding necessary to enforce the provisions of Section * * * 407 * * * *"

■ This expression of legislative intent prevents any interpretation creating a private right to prosecute the action. A similar conclusion was reached by the court in Reuss v. Moss-American, 323 F.Supp. 848 [D.Wisc., 1971], in a suit also brought under § 407, where the court stated that plaintiffs may not take it upon themselves to obtain convictions under §§ 407 and 411.

■ Plaintiffs' request for injunctive relief must also be denied. Plaintiffs have not demonstrated that they have an interest in such relief different from the general public. This standing requirement was recognized in Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 [1940], where the court said that the party seeking injunctive relief "to have standing in court, must show an injury or threat to a particular right of their own, as distinguished from the public's interest in the administration of the law." More recently, in a case very similar to this ac-

tion, Bass Angler v. U. S. Steel Corporation, 324 F.Supp. 412 [N.D.Ala., 1971], the court stated that:

> It is equally clear that under the facts of this case plaintiff is entitled to no injunctive relief * * * Because injunctions are extraordinary remedies they should be granted sparingly, and under strict rules, Reliable Transfer v. Blanchard, 145 F.2d 551 [5th Cir. 1944] * * * this plaintiff shows no interest in the enforcement different from that of the public in general and, thus, has no right to such relief.

The Court concludes that the motion to dismiss should be granted.

It is therefore ordered that defendant's motion to dismiss is sustained.