**Frank R. JACKLOVICH, as well for the United States of America as for himself, Plaintiff-Appellant,**

v.

**INTERLAKE, INC., Defendant-Appellee.**

No. 71-1382.

United States Court of Appeals, Seventh Circuit.

April 4, 1972.

Marshall Patner, Alexander Polikoff, Thomas R. Meites, Chicago, Ill., Sheldon Plager, ·Champaign, Ill., for plaintiff-appellant.

Henry L. Pitts, W. Gerald Thursby, Clifton A. Lake, Chicago, Ill., for defendant-appellee; Hackbert, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., of counsel.

Before KILEY, CUMMINGS and SPRECHER, Circuit Judges.

CUMMINGS, Circuit Judge.

In this *qui tam* action,[1] plaintiff sued "as well for the United States of America as for himself" under Sections 13 and 16 of the Rivers and Harbors Act of 1899 (33 U.S.C.A. §§ 407 and 411–412).[2] He alleged that in May 1969 defendant Interlake, Inc. was found guilty of discharging and depositing refuse matter from its Riverdale, Illinois, steel mill into the Little Calumet River during June 1968. That conviction occurred in a suit brought by the United States Attorney for the Northern District of Illi-

---

1. The phrase "qui tam" is derived from the common law action "qui tam pro domino rege quam pro se ipso in hac parte sequitur"—who as well for the king as for himself sues in this matter.

2. Section 13 of the Act makes it unlawful to discharge or deposit refuse matter from a manufacturing establishment into navigable waters of the United States. The most pertinent part of Section 16 is reproduced *infra*, early in the text of this opinion.

nois on the basis of information provided by plaintiff and resulted in a fine, one-half of which was paid to plaintiff pursuant to Section 16 of the Act. See United States v. Interlake Steel Corp., 297 F.Supp. 912 (N.D.Ill.1969).

The complaint asserts that plaintiff observed 26 subsequent instances of discharge into the river by defendant from June 1969 through October 1970. Plaintiff purportedly gave the bulk of this information to the United States Attorney for the Northern District of Illinois and to the Department of the Army, but the Government instituted no further proceedings against Interlake under this Act. Pursuant to the first sentence of Section 16 of the 1899 Act (33 U.S.C.A. § 411), he requested the district court to require Interlake to pay a fine not exceeding $2,500 nor less than $500 for each of these 26 violations, one-half to the United States and one-half to plaintiff, who commendably agreed to pay his net recovery to not-for-profit organizations "for use in the prevention of water pollution or the restoration of water quality in navigable waters of the United States."

Expressly following Bass Anglers Sportsman's Society v. United States Plywood-Champion Papers, 324 F.Supp. 302 (S.D.Tex.1971), the district court granted defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted, holding that the relevant part of Section 16 of the Act is a criminal statute and does not authorize the bringing of a *qui tam* action.[3] This appeal followed.

The sole question before us is whether the first sentence of Section 16 of the Rivers and Harbors Act of 1899 authorizes a *qui tam* action. It provides as follows:

"Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections 407, 408, and 409 of this title [Sections 13, 14 and 15 of the Act] shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) for not less than thirty days nor more than one year, or by both such fine and imprisonment, in the discretion of the court, one-half of said fine to be paid to the person or persons giving information which shall lead to conviction." (33 U.S.C.A. § 411)

Section 17 of the Act provides in part:

"The Department of Justice shall conduct the legal proceedings necessary to enforce the provisions of sections * * * 407 [and] * * * 411 * * * of this title [Sections 13 and 16 of the Act]; and it shall be the duty of United States attorneys to vigorously prosecute all offenders against the same whenever requested to do so by the Secretary of the Army or by any of the officials hereinafter designated * * *." (33 U.S.C.A. § 413)

An examination of the above portion of Section 16 readily discloses that it is a criminal provision. Persons guilty of violating Section 13 (see note 2 *supra*) are made guilty of a misdemeanor, resulting in a fine or imprisonment, or both. There must be a criminal conviction before half of the criminal penalty is to be paid to the informer. No *qui tam* action is authorized. This interpretation is buttressed by Section 17, for it places the enforcement powers as to Sections 13 and 16 in the hands of the Department of Justice, with offenders to be prosecuted by the appropriate United States Attorneys.[4] In the present case, for reasons undisclosed in the record,

3. The court below did not file an opinion because it would not "add anything to what has already been written."

4. Roscoe Pound's statement that an informer may sue in his own name "where a penalty is given to him in whole or in part for that reason alone" is not to the contrary, for he was not discussing a criminal statute which is expressly to be enforced by the Department of Justice.

the United States Attorney for the Northern District of Illinois has not seen fit to prosecute Interlake for the 26 instances of discharge described in this complaint,[5] and he cannot be compelled to initiate another criminal action against Interlake. United States v. Jones, 438 F.2d 461, 468 (7th Cir. 1971); United States v. Cox, 342 F.2d 167, 171–172 (5th Cir.) (en banc), certiorari denied, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965); Pugach v. Klein, 193 F.Supp. 630, 634–635 (S.D. N.Y.1961). Since the informer's right to recover half the fine depends on a conviction in proceedings brought by the Government, plaintiff is remediless here. Two Courts of Appeals and twelve district courts that have considered the problem have unanimously so held.[6]

Plaintiff attempts to avoid this result by reliance upon the last portion of Section 16 of the Act. That portion makes it a misdemeanor for masters, pilots, engineers, and other persons acting as such to engage in substantive violations of the statute. It then provides:

"Any boat, vessel, scow, raft, or other craft used or employed in violating any of the provisions of sections 407, 408, and 409 of this title [Sections 13, 14 and 15 of the Act] shall be liable for *the pecuniary penalties specified in section 411 of this title* [the first part of Section 16 of the Act], and in addition thereto for the amount of the damages done by said boat, vessel, scow, raft, or other craft, which latter sum shall be placed to the credit of the appropriation for the improvement of the harbor or waterway in which the damage occurred, and said boat, vessel, scow, raft, or other craft may be proceeded against summarily by way of libel in any district court of the United States having jurisdiction thereof". (33 U.S.C.A. § 412; emphasis supplied)

Plaintiff claims that the phrase "pecuniary penalties specified" in this part of Section 16 of the Act means that civil penalties may be assessed under the previous criminal fine language of Section 16. We do not accept this strained con-

See Pound, Actions on Penal Statutes, 42 Central Law Journal 135 (1908).

Plaintiff also relies on 28 U.S.C.A. § 2461(a) which permits civil actions to recover "a civil fine, penalty or pecuniary forfeiture * * * prescribed for the violation of an Act of Congress *without specifying the mode of recovery or enforcement thereof*." (Emphasis supplied.) However, as seen, in Section 17 of the 1899 Act, Congress has explicitly provided for the Department of Justice to enforce Sections 13 and 16 of that Act, so that Section 2461(a) does not authorize the criminal fine specified in the first part of Section 16 to be recovered in a civil action.

5. According to its regulations, the Corps of Engineers of the Department of the Army does not take action (see 33 U.S. C.A. § 413) where violations are "minor, unintentional or accidental" and generally does not recommend prosecution (see *Id.*) where an alleged violation is "trivial, apparently, unpremeditated and results in no material public injury," but only "in all cases of willful or intentional violations." 33 C.F.R. §§ 209.395 and 209.400. See United States v. Interlake Steel Corp., 297 F.Supp. 912, 915 (N.D.Ill.1969).

6. Connecticut Action Now, Inc. v. Roberts Plating Co., Inc., 457 F.2d 81 (2d Cir., 1972); Bass Anglers Sportsman's Soc'y v. Koppers Co., 447 F.2d 1304 (5th Cir. 1971) (*per curiam*), affirming, 324 F.Supp. 412 (S.D.M.D. & N.D.Ala.1971; joint opinion of three district judges); Gerbing v. ITT-Rayonier, Inc., 332 F. Supp. 309 (M.D.Fla.1971); Mitchell v. Tenneco Chemicals, Inc., 331 F.Supp. 1031 (D.S.C.1971); Lavagnino v. Porto-Mix Concrete, Inc., 330 F.Supp. 323 (D.Colo. 1971); Connecticut Action Now, Inc. v. Roberts Plating Co., Inc., 330 F.Supp. 695 (D.Conn.1971); Bass Anglers Sportsman's Soc'y v. Scholze Tannery, 329 F. Supp. 339 (E.D.Tenn.1971); United States ex rel. Mattson v. Northwest Paper Co., 327 F.Supp. 87 (D.Minn.1971); Enquist v. Quaker Oats Co., 327 F.Supp. 347 (D.Neb.1971); United States v. Florida-Vanderbilt Development Corp., 326 F. Supp. 289 (S.D.Fla.1971); Durning v. ITT-Rayonier, Inc., 325 F.Supp. 446 (W. D.Wash.1970); Bass Anglers Sportsman's Soc'y v. United States Plywood-Champion Papers, Inc., 324 F.Supp. 302 (S.D.Tex.1971); Reuss v. Moss-America, Inc., 323 F.Supp. 848 (E.D.Wis.1971).

struction in view of the plain language to the contrary in the earlier part of Section 16. Moreover, the underscored language was obviously used to limit the *in rem* liability against any vessel used in violation of the Act to a maximum of $2,500 and minimum of $500, as provided in the first sentence of Section 16. United States v. The Republic No. 2, 64 F.Supp. 373, 377 (S.D.Tex.1946); and United States v. The M/V Martin, 198 F.Supp. 171, 176 (S.D.Ill.1961), affirmed, 313 F.2d 851 (7th Cir. 1963), are not to the contrary because those were both *in rem* actions brought by the United States. We believe their references to "the pecuniary penalties specified" in Section 16 were merely to show the measure of the *in rem* liability under the last part of Section 16, in accord with the statutory scheme as it clearly appears. Simply put, the availability of an *in rem* action with liability in part measured by criminal penalties prescribed in the preceding portion of the statute does not imply the availability of a civil remedy under the preceding portion. On the contrary, the difference in the types of proceedings provided for in distinct provisions of the statute emphasizes the criminal character of that afforded in the first sentence of Section 16. See Helvering v. Mitchell, 303 U.S. 391, 404, 58 S.Ct. 630, 82 L.Ed. 917.

Plaintiff also contends that the first sentence of Section 16 authorizes a civil action for monetary penalties because the Government has brought civil actions to enjoin violations of other provisions of the Act.[7] However, plaintiff has cited no case in which the Government has proceeded civilly under the first sentence of Section 16, which provides that the mode of recovery of the penalties imposed thereunder is by a criminal action. Merely because other provisions of the Act may be enforced by civil injunctive action does not mean

that plaintiff can recover monetary penalties under the opening sentence of Section 16 by way of a *qui tam* action. Moreover, while civil remedies for violations of penal statutes are sometimes implied in favor of those whose special protection is the statutory purpose, the bare fact that Section 16 of the Act affords a portion of the criminal penalty assessed upon conviction to an informer is an insufficient basis on which to deprive alleged violators of the procedural protections attendant upon a criminal prosecution. Cf. Helvering v. Mitchell, 303 U.S. 391, 402–403, 58 S.Ct. 630, 82 L.Ed. 917. What the appellant seeks to accomplish here is not collateral civil enforcement of a standard of conduct prescribed in a penal statute especially for his benefit, but recovery of the criminal penalty without the necessity of the criminal prosecution the statute clearly requires.

Plaintiff relies on Adams v. Woods, 6 U.S. 336, 2 Cranch. 336, 2 L.Ed. 297, but the anti-slave trade statute involved there specifically provided for the informer to sue for the fine, as did the Ohio anti-gambling statute in Marvin v. Trout, 199 U.S. 212, 26 S.Ct. 31, 50 L.Ed. 157. Likewise, in United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443, the statute permitted informer suits to "be brought and carried on by any person." See 317 U.S. at 546, 63 S.Ct. at 385. Although the Government presented strong policy arguments against the informer's scheme involved in the *Marcus* case, the Court held that in view of the clear statutory policy there permitting informer suits, the proper forum for change was Congress (317 U.S. at 546–547, 63 S.Ct. 379), and shortly thereafter Congress accepted the challenge by repealing R.S. 3493 and revising R.S. 3491.[8] It should be noted too that in *Marcus* the penalty involved was civil in nature, whereas the

---

7. See, *e. g.*, United States v. Republic Steel Corp., 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed. 2d 908, United States v. Florida Light and Power Co., 311 F.Supp. 1391 (S.D. Fla.1970).

8. See 31 U.S.C.A. § 232 and 31 U.S.C.A. § 234 Historical Note.

pertinent part of Section 16 of this Act requires a criminal conviction before an informer may share in the penalty. 317 U.S. at 549–552, 63 S.Ct. 379.

Our holding that only the United States may bring and prosecute an action to impose the penalty described by the Rivers and Harbors Act is reinforced by the Eighth Circuit's opinion in Williams v. Wells Fargo Co., Express, 177 F. 352, 354–356 (8th Cir. 1910). There a postal statute provided that one-half of the penalties and forfeitures imposed for violation of the postal laws should be recoverable "to the use of the person informing and prosecuting for the same." The court stated that such language (which is much broader than the key part of Section 16 of the Rivers and Harbors Act) standing alone would impliedly authorize an informer to bring a *qui tam* action. Nevertheless, the court held that a *qui tam* suit was prohibited because another section of the postal laws required that all suits for recovery of penalties or forfeitures thereunder "shall be brought in the name of the United States." [9] Similarly here, Section 17 of this Act commits the enforcement of Sections 13 and 16 of the Rivers and Harbors Act to the Department of Justice, thus also prohibiting *qui tam* actions by informers.

While we share the public's growing concern with pollution of public waters, the present design of the 1899 Rivers and Harbors Act does not permit *qui*

*tam* actions to recover penalties for the discharge of refuse matter into navigable streams. Congress is the proper forum for amending the statute to permit such actions.[10]

Affirmed.

---

9. See also Allen v. Craig, 102 Or. 254, 201 P. 1079 (1921); People ex rel. Wegner v. Hartford Life Ins. Co., 186 Ill.App. 117 (1914); State ex rel. Rodes v. Warner, 197 Mo. 650, 94 S.W. 962 (1906); and Omaha & R. V. Ry. v. Hale, 45 Neb. 418, 63 N.W. 849 (1895). Contrary cases relied upon by plaintiff involve such different statutory language as to be unpersuasive. Since it is clear that *qui tam* actions are not permitted under this particular statutory language, it is unnecessary to consider the English common law history and precedents.

10. Cf. United States ex rel. Marcus v. Hess, 317 U.S. 537, 547, 63 S.Ct. 379, 87 L.Ed. 443. Plaintiff relies on footnote 4 of the

*Marcus* opinion which states in part as follows:

"Statutes providing for a reward to informers which do not specifically either authorize or forbid the informer to institute the action are construed to authorize him to sue, Adams v. Woods [6 U.S. 336], 2 Cranch. 336 [2 L.Ed. 297]."

As seen, the statute in *Adams* specifically authorized the informer to sue to recover half the fine. Here Section 17 of the Act forbids the informer to sue because the enforcement powers are committed to the Department of Justice, and the critical part of Section 16 itself provides only for criminal proceedings.