Walter PARSELL et al.

v.

SHELL OIL COMPANY et al.

Civ. No. B–700.

United States District Court, D. Connecticut.

Oct. 19, 1976.

Daniel Shepro, Bridgeport, Conn., George G. Kilarjian, New York City, for plaintiffs.

G. Whitney Biggs, Bridgeport, Conn., for defendants.

## RULING ON MOTION TO STRIKE DEMAND FOR JURY TRIAL

NEWMAN, District Judge.

Defendants' motion to strike plaintiffs' jury demand in this oil spill case raises important questions concerning the availability of federal jurisdiction for water pollution claims. The plaintiffs in this action claim damages for injuries arising out of an oil spill in Bridgeport harbor in 1970. The complaint alleges that while a cargo of oil was being pumped off a cargo ship to a terminal operated by the defendant Buckley Bros., an improper alignment of a valve caused a discharge of 655,000 gallons of oil into the navigable water of the harbor.

█ A previous motion to dismiss for lack of federal jurisdiction has been denied, the magistrate finding that whatever other bases of jurisdiction may exist, the complaint at least alleged a cause of action in admiralty. Further consideration of available bases of federal jurisdiction is now required by defendant's motion to strike the demand for a jury trial. For if the sole basis for federal jurisdiction is admiralty, the plaintiffs have no right to a jury trial, while if a separate and independent basis for federal jurisdiction exists to support a claim for damages at law, the jury demand must be honored.[1]   Fed.R.Civ.P. 28; 7A

---

1. The plaintiffs have not suggested that there are pendent state law claims which a jury should hear. The complaint is in one cause of action, characterized in the jurisdictional allegations as a "maritime tort."

Moore's Federal Practice ¶ 0.59[3]. Since there is no diversity of citizenship, it is necessary to examine plaintiffs' claim that jurisdiction may be founded on 28 U.S.C.A. § 1331.

■ Section 1331 clearly does not provide federal question jurisdiction for an admiralty claim, *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959). Plaintiffs argue, however, that they have stated a cause of action arising under the laws of the United States within the meaning of § 1331 for two separate reasons. First, they assert that they have an implied federal civil remedy under § 13 of the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C.A. § 407. Second, they argue that they have a claim arising under a federal common law of water pollution, which may be recognized for the purpose of § 1331 under the doctrine of *Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972).

*Do the plaintiffs have an implied private right of action under 33 U.S.C.A. § 407?* (

The federal statute that plaintiffs allege affords them a basis for federal jurisdiction makes it unlawful to discharge refuse matter into navigable waters.[2] Although private parties have brought suits under § 407 and companion sections of the Rivers and Harbors Appropriation Act, their success in previous cases is not controlling on the present issue. Many of the cases invoking § 407 were brought in admiralty and thus did not require consideration of whether a federal question claim at law existed.[3] In general these cases invoked the Act to support a standard of care rather than to provide a cause of action arising under federal law.

The cases finding a private right of action under other sections of the Rivers and Harbors Appropriation Act[4] are not controlling on the question of the existence of such a right under § 407. The statutory provisions involved in these cases, 33 U.S.C.A. §§ 401, 403, and 406, contain an express grant of jurisdiction to the district courts to grant injunctive relief for violations of those provisions. The absence of such a remedy in § 407 renders these cases doubtful authority for finding an implied right of action under this provision.

With the recent growth of environmental litigation in the federal courts, attempts to find some sort of private right of action implied under the 1899 statute have increased.[5] Our circuit left this disputed is-

---

**2.** 33 U.S.C.A. § 407 reads as follows:

It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; and it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any navigable water, or on the bank of any tributary of any navigable water, where the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise, whereby navigation shall or may be impeded or obstructed.

**3.** *See, e. g., Acme Boat Rentals, Inc. v. J. Ray McDermott & Co.*, 424 F.2d 393 (5th Cir. 1970); *Burgess v. M/V Tamano*, 370 F.Supp. 247 (D.Me.1973); *Lauritzen v. Chesapeake Bay Bridge & Tunnel Dist.*, 259 F.Supp. 633 (E.D. Va.1966); *Gulf Atlantic Transp. Co. v. Becker County Sand & Gravel Co.*, 122 F.Supp. 13 (E.D.N.C.1954); *Maier v. Publicker Commercial Alcohol Co.*, 62 F.Supp. 161 (E.D.Pa.1945), aff'd, 154 F.2d 1020 (3d Cir. 1946).

**4.** *See, e. g., Neches Canal Co. v. Miller & Vidor Lumber Co.*, 24 F.2d 763 (5th Cir. 1928); *Lauritzen v. Chesapeake Bay Bridge & Tunnel Dist.*, 259 F.Supp. 633 (E.D.Va.1966); *Sierra Club v. Leslie Salt Co.*, 354 F.Supp. 1099 (N.D. Cal.1972); *Sierra Club v. Morton*, 400 F.Supp. 610 (N.D.Cal.1975); *Potomac Riv. Assn., Inc. v. Lundeberg Maryland Seamanship School, Inc.*, 402 F.Supp. 344 (D.Md.1975).

**5.** Annot., Right of Private Party to Sue Polluter, 15 A.L.R.Fed. 636; Note, Environmental Law—Private Remedies for Pollution of Navigable Waters, 50 No.Car.L.Rev. 153 (1971).

sue open in *Connecticut Action Now, Inc. v. Roberts Plating Co.,* 457 F.2d 81 (2d Cir. 1972). But other cases that have recognized or denied a private right of action under federal regulatory statutes shed light on whether such a right can be found in § 407. See, *e. g., J. I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); *Reitmeister v. Reitmeister,* 162 F.2d 691 (2d Cir. 1947); *Fischman v. Raytheon Mfg. Co.,* 188 F.2d 783 (2d Cir. 1951); *Fitzgerald v. Pan American World Airways,* 229 F.2d 499 (2d Cir. 1956); *Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2d Cir. 1966); *Ivy Broadcasting Co. v. American Telephone & Telegraph Co.,* 391 F.2d 486 (2d Cir. 1968). These cases set forth a general doctrine "which, in the absence of contrary implications, construes a criminal statute, enacted for the protection of a specified class, as creating a civil right in members of the class, although the only express sanctions are criminal." *Reitmeister v. Reitmeister, supra* at 694. But they also make clear that "contrary implications" may be found in "the nature of the particular rule and its place in the regulatory scheme." *Colonial Realty Corp. v. Bache & Co., supra* at 182. The Supreme Court set forth the proper standards for judging a particular statute in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975):

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant.

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? [citations omitted].

■ Consideration of the statute in light of these criteria makes it clear that even though the statute explicitly condemns certain conduct, Congress intended to place responsibility for its enforcement somewhere other than in private hands.

Section 407, which makes discharge of refuse illegal, must be read together with the companion sections of the Rivers and Harbors Appropriation Act providing for enforcement. Section 411 of the Act provides that a violation of § 407 shall be punished by fine or imprisonment or both, and also provides that one-half of such fine shall be paid to the person or persons giving information leading to conviction.[6] Section 413 of the Act makes it the duty of the Department of Justice to enforce the Act and the duty of United States attorneys to prosecute whenever requested to do so by certain designated officials.[7] This statuto-

**6.** Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections 407, 408, and 409 of this title shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) for not less than thirty days nor more than one year, or by both such fine and imprisonment, in the discretion of the court, one-half of said fine to be paid to the person or persons giving information which shall lead to conviction.

**7.** The Department of Justice shall conduct the legal proceedings necessary to enforce the provisions of sections 401, 403, 404, 406, 407, 408, 409, 411, 549, 686, and 687 of this title; and it shall be the duty of United States

attorneys to vigorously prosecute all offenders against the same whenever requested to do so by the Secretary of the Army or by any of the officials hereinafter designated . . . and for the better enforcement of the said provisions and to facilitate the detection and bringing to punishment of such offenders, the officers and agents of the United States in charge of river and harbor improvements, and the assistant engineers and inspectors employed under them by authority of the Secretary of the Army, and the United States collectors of customs and other revenue officers shall have power and authority to swear out process, and to arrest and take into custody, with or without process, any person or persons who may commit any of the acts or offenses prohibited by the said sections, or

ry scheme evinces an intent to lodge enforcement responsibility solely in the Department of Justice, which can make discretionary prosecutorial decisions taking into account the effects of other federal water quality legislation.[8] Congress has not authorized "private attorneys-general" to enforce this section. For this reason every court which has considered the question has denied to private plaintiffs the right to bring an action under the Act to recover in a *qui tam* action the percentage of the fine which they might have been entitled to receive as informers if an offense had been prosecuted to conviction.[9] Our circuit has taken this position in *Connecticut Action Now, Inc. v. Roberts Plating Co., supra,* stating: "It is hard to look at [the statutory] pattern except as a mandate that the Federal Government is to be the initiator of the proceeding." 457 F.2d at 85. See also *Hooper v. United States,* 331 F.Supp. 1056 (D.Conn.1971); *Morris v. Tennessee Valley Authority,* 345 F.Supp. 321 (N.D.Ala.1972).

While the Second Circuit reserved decision on the question of a private right of action for compensatory damages, its reasoning on the issue of a private suit for the informer's half of the fine is persuasive as to damages as well. Many of the persons in possession of information that could help the Government convict violators would be injured persons as well. If they could bring their own private suit for compensation, it would seem to follow that the informer's reward should be granted in the same proceeding, since all issues of law and fact with the exception of burden of proof would be the same or closely related. Yet it is the unanimous opinion of the federal courts that have considered the question that the Department of Justice must be the initiator of the proceeding. The informer's status as injured person has not enhanced his rights under the statute.[10]

■ Several courts have directly confronted the question of an implied right of action in favor of a private party personally injured by a violation of § 407. *Guthrie v. Alabama By-Products Co.,* 328 F.Supp. 1140 (N.D.Ala.1971), *aff'd,* 456 F.2d 1294 (5th Cir. 1972), *cert. denied,* 410 U.S. 946, 93 S.Ct. 1352, 35 L.Ed.2d 613 (1973); *Lavagnino v. Porto-Mix Concrete, Inc.,* 330 F.Supp. 323 (D.Colo.1971); and *Chambers-Liberty Counties Navigation District v. Parker Bros. & Co.,* 263 F.Supp. 602 (S.D.Tex.1967),[11] declined to find a private

who may violate any of the provisions of the same . . .

8. Fed. Water Pollution Control Act, 62 Stat. 1155, 33 U.S.C. § 1151; National Environmental Policy Act of 1969, 83 Stat. 852, 42 U.S.C. § 4321 *et seq.*

9. *Connecticut Action Now, Inc. v. Roberts Plating Co.,* 457 F.2d 81 (2d Cir. 1972); *Hughes v. Ranger Fuel Corp.,* 467 F.2d 6 (4th Cir. 1972); *Jacklovich v. Interlake, Inc.,* 458 F.2d 923 (7th Cir. 1972); *Anderson v. Norfolk & Western Ry.,* 349 F.Supp. 121 (W.D.Va.1972); *Gerbing v. I.T.T. Rayonier Inc.,* 332 F.Supp. 309 (M.D. Fla.1971); *Mitchell v. Tenneco Chemicals, Inc.,* 331 F.Supp. 1031 (D.S.C.1971); *Enquist v. Quaker Oats Co.,* 327 F.Supp. 347 (D.Neb. 1971); *Lavagnino v. Porto-Mix Concrete, Inc.,* 330 F.Supp. 323 (D.Colo.1971); *Bass Anglers Sportsman's Soc. v. Scholze Tannery, Inc.,* 329 F.Supp. 339 (E.D.Tenn.1971); *United States ex rel. Mattson v. Northwest Paper Co.,* 327 F.Supp. 87 (D.Minn.1971); *United States v. Florida-Vanderbilt Development Corp.,* 326 F.Supp. 289 (S.D.Fla.1971); *Reuss v. Moss-American, Inc.,* 323 F.Supp. 848 (E.D.Wis. 1971); *Bass Anglers Sportsman's Soc. v. United States Plywood-Champion Papers, Inc.,* 324 F.Supp. 302 (S.D.Tex.1971); *Bass Angler Sportsman Soc. v. United States Steel Corp.,* 324 F.Supp. 412 (M.D.Ala.1971), *aff'd per curiam,* 447 F.2d 1304 (5th Cir. 1971); *Durning v. I.T.T. Rayonier, Inc.,* 325 F.Supp. 446 (W.D. Wash.1970).

10. Although in the *Connecticut Action Now* case and some of the other *qui tam* cases the plaintiff did not claim to be personally injured and would not have been able to recover compensatory damages in any event, the fact that plaintiff was personally injured has not changed the result in the cases which have presented the issue. See, e. g., *Lavagnino v. Porto-Mix Concrete, Inc., supra.*

11. See also *H. Christiansen & Sons, Inc. v. City of Duluth,* 154 F.2d 205 (8th Cir. 1946), in which the Court expressed grave doubts concerning the existence of any federal question jurisdiction in a private suit under § 407 and concluded at 207:

The statute relied upon has particular reference to impeding or obstructing navigation. It is a penal statute and hence, must be strictly construed. It contains no provision for the recovery of damages for its violation.

right of action under § 407, at least where the allegations of the complaint did not include obstruction of navigation. Justification for limiting any private right of action to cases involving navigation was found in the legislative history of the 1899 Act. As in these cases, there is no allegation of obstruction of navigation in the present case.[12]

■ Under the standards set by the Supreme Court in *Cort v. Ash, supra,* it would be inappropriate to find a private right of action implied under § 407 of the Rivers and Harbors Appropriation Act of 1899. The "class for whose especial benefit the statute was enacted" is the public at large rather than any particular private parties.[13] The legislative intent, as manifested by the scheme of enforcement through criminal prosecutions, is to leave the prosecutorial responsibility exclusively with the Department of Justice. Implication of a private remedy would upset the criminal enforcement system of this Act and the other federal water quality statutes, and would be inconsistent with the unanimous judicial construction that informer's fines be awarded only after a criminal prosecution has taken place. Finally, state law of nuisance and federal admiralty law provide ample traditional remedies, so that the Court's decision on this point does not leave the plaintiff without any redress. The Court does no more than hold that § 407 does not create a private cause of action under the laws of the United States so as to provide an independent basis for federal jurisdiction outside of admiralty.

> It does not on its face purport to establish a civil liability. It imposed a penalty as punishment for a wrong to the public. Any private right of action which exists under it is by implication only and would not in any event extend beyond the purposes of its prohibitions.

12. In view of the absence of allegations relating to obstruction of navigation in this complaint, the Court follows these cases insofar as they hold that the Act creates no private cause of action against a polluter. But it should be noted that reading the 1899 legislative history to distinguish obstruction of navigation from pollution is questionable in light of the Supreme Court's recent interpretations of the Act

*Do the plaintiffs have a right of action under the federal common law of water pollution?*

Plaintiffs urge that *Illinois v. Milwaukee,* 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), requires a finding of federal question jurisdiction for § 1331 purposes on the theory that the claim arises under the federal common law of water pollution. The broadest possible reading of that decision would give considerable support to the plaintiffs. But at least three important factors were present in *Illinois v. Milwaukee* and are not present here. The first was the fact that the plaintiff was a governmental entity; the second was the interstate nature of the pollution involved; and the third was the claim in that case for equitable relief.

In *Illinois v. Milwaukee* the plaintiff was a state. Further, in the cases cited by the Supreme Court in support of its holding, state plaintiffs were likewise involved. The Court quoted a passage from *Georgia v. Tennessee Copper Co.,* 206 U.S. 230, 238, 27 S.Ct. 618, 51 L.Ed. 1038 (1907), highlighting the significance of the plaintiff's sovereign status:

> It is a fair and reasonable demand on the part of a sovereign that the air over its territory should not be polluted on a great scale by sulphurous acid gas, that the forests on its mountains, be they better or worse, and whatever domestic destruction they have suffered, should not be further destroyed or threatened by the act of persons beyond its control, that the crops and orchards on its hills should not

to encompass pollution as well as obstruction where the United States brings an enforcement action. *United States v. Standard Oil Co.,* 384 U.S. 224, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966); *United States v. Pennsylvania Industrial Chemical Corp.,* 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973).

13. *See Guthrie v. Alabama By-Products Co., supra,* 328 F.Supp. at 1145, citing *Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), for the proposition that "a principal beneficiary of the Act, if not the principal beneficiary, is the Government itself."

be endangered from the same source. If any such demand is to be enforced this must be, notwithstanding the hesitation that we might feel if the suit were between private parties, and the doubt whether for the injuries which they might be suffering to their property they should not be left to an action at law.

As the Court in *Milwaukee* stated:

> Thus, a State with high water-quality standards may well ask that its strict standards be honored and that it not be compelled to lower itself to the more degrading standards of a neighbor. 406 U.S. at 107, 92 S.Ct. at 1395.

Several recent cases have extended the federal common law of nuisance action beyond cases brought by states as plaintiffs to include cases brought by the United States. See, e. g., *United States v. Ira S. Bushey & Sons, Inc.*, 346 F.Supp. 145 (D.Vt.1972), 363 F.Supp. 110 (D.Vt.1973), *aff'd,* 487 F.2d 1393 (2d Cir. 1973), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3182, 41 L.Ed.2d 1146 (1976); *United States v. United States Steel Corp.,* 356 F.Supp. 556 (N.D.Ill.1973); *United States v. Stoeco Homes, Inc.,* 498 F.2d 597, 611 (3d Cir. 1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); see also *Stream Pollution Control Board of Indiana v. United States Steel Corp.,* 512 F.2d 1036, 1040, n. 9 (7th Cir. 1975). But this right of action has not been extended to suits brought by private plaintiffs. Thus in *Committee for the Consideration of the Jones Falls Sewage System v. Train,* 375 F.Supp. 1148 (D.Md.1974), the Court agreed with the defendants that individuals and citizen associations could not bring an action based on the federal common law of nuisance.

Even if, as some commentators have urged,[14] the federal nuisance law right of action should be extended to private plaintiffs, at the very least this right of action should be limited to suits involving pollution with an impact on more than one state. In *Illinois v. Milwaukee* the discharges flowed from the state of Wisconsin to the state of Illinois and had an adverse impact on persons living in the state of Illinois. In contrast, although the oil spill involved here took place in navigable waters, no interstate effect[15] is alleged in the complaint. The impact of the spill appears to have been limited to Bridgeport Harbor. See *Reserve Mining Co. v. Environmental Protection Agency,* 514 F.2d 492, 520 (8th Cir. 1975), in which the Court rejected the federal common law of nuisance as a basis of relief because "federal nuisance law contemplates, at a minimum, interstate pollution of air or water." The Court noted that neighboring states had not complained and no effects outside the Silver Bay, Minnesota, area were alleged.

It will take a clearer indication than the opinion in *Illinois v. Milwaukee* to persuade me that the Supreme Court intends federal jurisdiction for a common law claim to be available for every incident of pollution involving navigable waters.

Finally, there is some justification for limiting any right of action under *Illinois v. Milwaukee* to private parties seeking injunctive relief rather than damages.[16] Part

14. Note, Environmental Law—Cause of Action Under Federal Common Law for Pollution of Interstate Waters, 77 Dick.L.Rev. 451 (1973); Note, Jurisdiction—Federal Common Law Under 1331(a), 52 Neb.L.Rev. 301 (1973); McMahan, The New Federal Common Law, 13 For the Defense 83 (1972).

15. "Interstate effect" is used here to mean pollution originating within one state adversely affecting another state. Of course, as a matter of constitutional power Congress can regulate pollution affecting interstate commerce as expansively as the modern reach of the commerce clause permits, and this power can be used to authorize private enforcement if Congress so chooses. But courts asked to fashion a federal common law to adjudicate interstate disputes have usually done so only in contexts where the "interstate" nature of the dispute concerned states or state interests, rather than matters within interstate commerce in the constitutional sense. *See* Note, "The Case for a Federal Common Law of Aircraft Disaster Litigation," 51 N.Y.U.L.Rev. 231, 243, n. 84 (1976).

16. *See Byram River v. Village of Port Chester, N. Y.,* 394 F.Supp. 618 (S.D.N.Y.1975), where the suit was brought to abate the depositing of inadequately treated sewage. The private plaintiffs included not only an individual and an association, but also the river itself. The requested relief, however, was equitable in nature.

of the reason why the Supreme Court encouraged the development of the federal common law of water pollution in *Milwaukee* was the need for resolution of intricate and highly important questions of the appropriate water quality standards to apply. As the Court said, "These will be equity suits in which the informed judgment of the chancellor will largely govern." 406 U.S. at 107–108, 92 S.Ct. at 1395. A jury awarding damages in an oil spill case with wholly intrastate impact would be contributing to the development of evolving water quality standards only in the most *ad hoc* way.

*Conclusion*

█ Since neither the Rivers and Harbors Appropriation Act nor the federal common law of water pollution affords a basis for invoking federal jurisdiction for a damage action brought by private plaintiffs for pollution not affecting interstate interests, the case must remain on the admiralty side of the Court. Defendants' motion to strike the jury demand is therefore granted.