Eugene and Betty YATES et al., Plaintiffs,

v.

ISLAND CREEK COAL CO. et al., Defendants.

Civ. A. No. 78–0285–B.

United States District Court,
W. D. Virginia.

March 5, 1980.

John Jeffrey Fluck, Abingdon, Va., for plaintiffs.

Larry B. Kirksey, Woodward, Miles & Flannagan, Bristol, Va., Carl E. McAfee, Cline, McAfee & Adkins, Norton, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This matter is before the court on defendants' motion to dismiss for lack of jurisdiction. Plaintiff has asserted two independent bases of jurisdiction under 28 U.S.C. § 1331: (1) 33 U.S.C. § 407, the Rivers and Harbors Appropriation Act of 1899; or, (2) 30 U.S.C. § 1270(a), the Surface Mining Control and Reclamation Act of 1977. The initial question regarding both statutes is whether they create a private cause of action allowing these plaintiffs to assert their claims.

Plaintiffs, members of the same family, lived in close proximity to each other in a section known as Deskins Hollow until their homes and personal effects were lost when high water engulfed their property on April 4, 1977. They allege the flood was the end result of strip mining operations by the named defendants on the land across the stream that borders their property. Plaintiffs ask for damages for the injuries caused them by the defendants' negligent creation and maintenance of stripped slopes on the banks of the stream; they base their claim on 33 U.S.C. § 407, which prohibits the discharge of refuse into navigable waters, and on 30 U.S.C. § 1270(f), which allows damage actions against operators who have violated the strip mining act. They further allege that they are threatened by future landslides and ask for a permanent injunction ordering defendants to bring the strip mining site into conformity with the Surface Mining and Reclamation Act of 1977.

## I.

■ Plaintiffs rely on § 407 of the Rivers and Harbors Appropriation Act to create a private cause of action under which they can recover for their injuries.[1] The section prohibits discharge of refuse into navigable waters, and on its face does not provide for such a cause of action. This section has previously been held not to create a private right of action in several cases. *City of Evansville v. Kentucky Liquid Recycling,*

*Inc.,* 604 F.2d 1008 (4th Cir. 1979); *Parsell v. Shell Oil Co.,* 421 F.Supp. 1275 (D.Conn. 1976); *Guthrie v. Alabama By-Products Co.,* 328 F.Supp. 1140 (N.D.Ala.1971), *aff'd,* 456 F.2d 1294 (5th Cir. 1972), *cert. denied,* 410 U.S. 946, 93 S.Ct. 1352, 35 L.Ed.2d 613 (1973); *Lavagnino v. Porto-Mix Concrete, Inc.,* 330 F.Supp. 323 (D.Colo.1971); *Chambers-Liberty Counties Navigation District v. Parkers Bros. & Co.,* 263 F.Supp. 602 (S.D. Tex.1967).

The U.S. Supreme Court has limited inference of private rights of action when Congress has not expressly provided for one. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 565, 99 S.Ct. 2479, 2483, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (majority opinion), 713 (Rehnquist, J., concurring), 781 (Powell, J., dissenting) (1979). Although one of the reasons given for not allowing a private cause of action in the past was that no obstruction to navigation had been alleged in the complaint,[2] *Parsell v. Shell Oil Co.* goes further in its analysis to decide that under the circumstances no cause of action could be inferred. Likewise, this court must hold that no cause of action can be inferred to allow these plaintiffs to proceed under the statute.

This court must agree with the analysis used by the *Parsell* court in concluding that Congress did not intend for § 407 to be used

1. Whether plaintiffs have an implied cause of action under the statute is not a question of jurisdiction, however. *Burks v. Lasker,* 441 U.S. 471, 475 n. 5, 99 S.Ct. 1831, 1835 n. 5, 60 L.Ed.2d 404 (1979); *City of Evansville, supra,* at 1011 n. 4. If no other right had been asserted, then the action would have been dismissed on the grounds that the claim under the federal statute was clearly "immaterial and made solely for the purpose of obtaining jurisdiction." *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 279, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977), *quoting Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

2. Originally the courts read the statute as only prohibiting discharge of debris that causes an obstruction to navigation. The Supreme Court has read the statute differently: "§ 13 [33

U.S.C. § 407] is to be read in accordance with its plain language as imposing a flat ban on the unauthorized deposit of foreign substances into navigable waters, regardless of the effect on navigation." *United States v. Pennsylvania Industrial Chemical Corp.,* 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973). *See also United States v. Standard Oil Co.,* 384 U.S. 224, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966).

The *Parsell* court notes that no private cause of action is created in the absence of allegations relating to obstructions of navigation in the complaint. 421 F.Supp. at 1280 n. 12. It goes on, however, to say that the distinction between debris that obstructs navigation and that which does not is questionable in light of interpretations by the Supreme Court, citing the two cases above. *Id.*

for certain private remedial measures.[3] The standards for determining whether a statute impliedly creates a private cause of action are set forth by the U.S. Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975):

First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,'—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? [citations omitted.]

*Id.* at 78.

■ The Supreme Court has held that the principal beneficiary of the Act is the government itself. *Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967). The Act was designed to protect the navigable waters of the United States for the benefit of all, rather than for private parties. *Parsell*, 421 F.Supp. at 1280. It was definitely not created to protect a landowner who had suffered from the failure of strip miners to reclaim mined land.

The statutory scheme of the Rivers and Harbors Act reveals that the government has the primary responsibility for enforcing the Act, which again is to protect abuses of the nation's waters. Violation of § 407 can be punished by fine or imprisonment or both. 33 U.S.C. § 411. In addition, section 413 orders the Department of Justice to "conduct the legal proceedings necessary to enforce the provisions of sections . . . 407, . . . [and] 411 . . . of this title." To imply a private remedy would interfere with the criminal enforcement of the Act. If a conviction is obtained, then one-half of the fine is paid to the informant who gave the information leading to the conviction. The *Parsell* court held that to imply a private remedy would be inconsistent with the legislative purpose of the Act, since "informer's fines may be awarded only *after* a criminal prosecution has taken place." 421 F.Supp. at 1280.

■ Finally, the cause of action alleged is better left to the state courts as a matter of state law.[4] It would be a strained conception of the Act to perceive it as creating a cause of action to recompense parties who have been damaged by high water because of the alleged abuse of defendants' strip mine.

## II.

Plaintiffs also maintain there is a jurisdictional basis for their cause of action under the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201–1328. This argument is two-fold: (1) defendant's failure to undertake continuing reclamation renders them susceptible to a citizen's suit for damages under 30 U.S.C. § 1270(f); or (2) an emergency situation exists upon which the Secretary of the Interior should take action under 30 U.S.C. § 1240, and since such action has not been taken, then plaintiffs may bring a civil suit against the Secretary to force such action under 30 U.S.C. § 1270(a).

---

**3.** Other sections of the Act have been held to create a private cause of action when the underlying incident is in breach of a standard set forth by the federal statute, and the damage is within the parameter of that which is meant to be prevented by the Act. *Potomac River Ass'n, Inc. v. Lundeberg Md. Sea Sch., Inc.*, 402 F.Supp. 344, 356 (D.Md.1975).

**4.** It was mentioned in oral argument before the court that the action could be maintained under the court's admiralty jurisdiction. The court does not believe that this is an action properly within its admiralty jurisdiction; a tort to be cognizable under admiralty-jurisdiction must have some significant relation to traditional maritime activity. *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1973); *Moore v. Hampton Roads Sanitation*, 557 F.2d 1030 (4th Cir. 1976).

Plaintiffs' first argument must fail. The actions about which they complain occurred before the effective date of the Act; plaintiffs admit it would be stretching the point to suggest that the mining operations in question were in violation of the reclamation provisions outlined in the Act, given that mining operations had ceased prior to the Act's effective date. They go on to argue, however, that the responsibility to reclaim the land is an ongoing obligation and since defendants have breached this duty, there is "an ongoing breach of the regulatory provisions of the Act sufficient to afford these plaintiffs a federal forum under § 1270(f)." Section 1270(f) reads as follows:

Any person who is injured in his person or property through the violation by any operator of any rule, regulation, order, or permit issued pursuant to this chapter may bring an action for damages (including reasonable attorney and expert witness fees) only in the judicial district in which the surface coal mining operation complained of is located. Nothing in this subsection shall affect the rights established by or limits imposed under State Workmen's Compensation laws.

Congress would have acted inequitably if it had intended for operators to have an affirmative duty under the Act to reclaim land strip mined before the effective date of the Act, for the simple reason that some of the land would not be capable of being restored according to the strict provisions of the Act. One of the purposes of the Act is to prevent land from being strip mined if it can not be reclaimed according to its specifications.

▪ In support of the conclusion that there is no private cause of action under § 1270(f) for the failure to reclaim land strip mined before August 3, 1977, is Subchapter IV of the Strip Mining Act, encompassing the abandoned mine provisions. This subchapter, 30 U.S.C. §§ 1231–1243, was enacted to provide reclamation responsibility for lands strip mined before the enactment of the Act:

Lands and water eligible for reclamation or drainage abatement expenditures under this subchapter are those which were mined for coal or which were affected by such mining, wastebanks, coal processing, or other coal mining processes, and abandoned or left in an inadequate reclamation status prior to August 3, 1977, and for which there is no continuing reclamation responsibility under State or other Federal laws.

30 U.S.C. § 1234.[5] This section appears to bring the lands in question under the terms of 30 U.S.C. §§ 1231–1243.

Provision is made in 30 U.S.C. § 1231(a) for the institution of the Abandoned Mine Reclamation Fund [hereinafter referred to as the "fund"], which is to be administered by the Secretary of the Interior, and for the creation of state abandoned mine reclamation funds under an approved state program. Money collected for the fund, 30 U.S.C. § 1231(b), may be used for a variety of purposes, including, but not limited to, prevention of any adverse effects of coal mining practices that constitute an emergency under 30 U.S.C. § 1240:

(a) The Secretary is authorized to expend moneys from the fund for the emergency restoration, reclamation, abatement, control, or prevention of adverse effects of coal mining practices, on eligible lands, if the Secretary makes a finding of fact that—

(1) an emergency exists constituting a danger to the public health, safety, or general welfare; and

(2) no other person or agency will act expeditiously to restore, reclaim, abate, control, or prevent the adverse effects of coal mining practices.

(b) The Secretary, his agents, employees, and contractors shall have the right to enter upon any land where the emergency exists and any other land to have access to the land where the emergency

---

**5.** This court is unaware of any continuing reclamation responsibility under state or other federal laws applicable to these circumstances.

exists to restore, reclaim, abate, control, or prevent the adverse effects of coal mining practices and to do all things necessary or expedient to protect the public health, safety, or general welfare. Such entry shall be construed as an exercise of the police power and shall not be construed as an act of condemnation of property nor of trespass thereof. The moneys expended for such work and the benefits accruing to any such premises so entered upon shall be chargeable against such land and shall mitigate or offset any claim in or any action brought by any owner of any interest in such premises for any alleged damages by virtue of such entry: *Provided, however,* That this provision is not intended to create new rights of action or eliminate existing immunities.

Plaintiffs argue that this section may be enforced under § 1270(a) by a private citizen. Section 1270(a) provides:

(a) Except as provided in subsection (b) of this section, any person having an interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this chapter—

(1) against the United States or any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution which is alleged to be in violation of the provisions of this chapter or of any rule, regulation, order or permit issued pursuant thereto, or against any other person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter; or

(2) against the Secretary or the appropriate State regulatory authority to the extent permitted by the eleventh amendment to the Constitution where there is alleged a failure of the Secretary or the appropriate State regulatory authority to perform any act or duty under this chapter which is not discretionary with the Secretary or with the appropriate State regulatory authority.

The district courts shall have jurisdiction without regard to the amount in controversy or the citizenship of the parties.

Although § 1270(a) is included in Subchapter V, "Control of the Environmental Impacts of Surface Coal Mining," by its express language it is applicable to the entire chapter and, therefore, to Subchapter IV. The House Report notes that "[w]hile citizen participation is not, and cannot be, a substitute for governmental authority, citizen involvement in all phases of the regulatory scheme will help insure that the decisions and actions of the regulatory authority are grounded upon complete and full information." H.R.Rep. No. 95–218, 95th Cong., 1st Sess. 88–89, *reprinted in* [1977] U.S.Code Cong. & Admin.News, pp. 593, 625.

Section 1270(a) is limited, however, in the following manner:

(b) No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) prior to sixty days after the plaintiff has given notice in writing of the violation (i) to the Secretary, (ii) to the State in which the violation occurs, and (iii) to any alleged violator; or

(B) if the Secretary or the State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the provisions of this chapter, or any rule, regulation, order, or permit issued pursuant to this chapter, but in any such action in a court of the United States any person may intervene as a matter of right; or

(2) under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice in writing of such action to the Secretary, in such manner as the Secretary shall by regulation prescribe, or to the appropriate State regulatory authority, except that such action may be brought immediately after such noti-

**1000**

fication in the case where the violation or order complained of constitutes an imminent threat to the health or safety of the plaintiff or would immediately affect a legal interest of the plaintiff.

Plaintiffs in this case have not exhausted their administrative remedies under the Act and are limited by the plain language of the statute to first give notice of the need for reclamation to the proper parties. This does not mean, however, that there will be a cognizable cause of action for every mine that the Secretary or the state regulatory authorities have failed to reclaim.[6] The program is limited by its very terms to the money that has been accumulated before any operations can be put into effect. If the funds are present and the circumstances are appropriate, however, then the fund should be used in accordance with the section's stated purpose. It will be to the government's benefit to have citizens point out areas that need reclamation in order to have the program work.

It would be inappropriate for this court to determine at the present time under what sort of circumstances a civil suit could be brought under § 1270(a) for failure to carry out the mandates of the abandoned mine reclamation provisions. The question is not ripe for adjudication, and the necessary parties are not before the court. Furthermore, the House Report suggests that "appropriate selection of areas will be made in order to undertake land and water reclamation in a systematic way to assure the most critical areas and problems are addressed first." H.R.Rep. No. 95–918 at 139, *reprinted in* [1977] U.S.Code Cong. & Admin.News, p. 671.

Returning to plaintiffs' damage claims, § 1270(f), set out above, does not give a cause of action in this instance for the alleged injuries caused by the defendants. A cognizable cause of action could be stated if defendants were in violation of any rule, regulation, or order issued pursuant to this chapter under the abandoned mine provisions. Presently, however, they are not. Hypothetically, for example, it would appear a cause of action could arise if the landowner or tenant entered into a conservation and development plan with the Secretary of Agriculture under 30 U.S.C. § 1236, failed to follow the plan, and the plaintiff was damaged by that failure.

The statutory scheme outlined by Congress precludes *implication* of a cause of action for damages. Although persons affected by strip mines are meant to be protected by the Act, the legislation is designed with explicit guarantees in this regard. The court is left with the conclusion that injuries caused by land strip mined prior to the act are meant to be remedied under state law, unless the persons responsible have violated any rule or regulation under the abandoned mine provisions.

In accordance with the opinions expressed above, defendants' motions to dismiss are granted.

---

**6.** The court notes also that an action brought against the Secretary under § 1270(a)(2) is limited to review of nondiscretionary actions of the appropriate authority. The court will not decide at present whether 30 U.S.C. § 1240 presents a discretionary or nondiscretionary duty to the Secretary.