William Ralph ROBERTS et
al., Libelants,

v.

Larry GRAMMER, Respondent.

Civ. No. 3–76–267.

United States District Court,
E. D. Tennessee, N. D.

Jan. 11, 1977.

Glen R. Claiborne, Knoxville, Tenn., for libelants.

Thomas S. Scott, Jr., Knoxville, Tenn., for respondent.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Respondent has moved to dismiss libelants' action on the ground that the alleged tortious injury is not within the scope of this Court's admiralty jurisdiction.

Libelants claim that their fifteen-foot wooden fishing boat was struck by a boat operated by the respondent at approximately 11:00 p. m. on June 19, 1975. Libelants allege that this collision was the result of respondent's negligence and the unseaworthiness of his craft, and therefore he is liable to them for the damage done to their boat and for the personal injuries suffered by them as a result of the collision. They premise federal jurisdiction on 28 U.S.C. § 1333, the statutory grant of admiralty jurisdiction.

The recent Supreme Court case, *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), is the primary focus of our inquiry. This unanimous opinion by Justice Stewart has already required this Court to reexamine its previous assumption of admiralty jurisdiction over water-skiing accidents. *See Webster v. Roberts,* 417 F.Supp. 346 (E.D.Tenn.1976). After a careful analysis of the *Executive Jet* opinion, cases inter-

preting that decision, and relevant authorities on the subject, the Court is of the opinion that federal admiralty jurisdiction does not apply to the facts alleged herein.

Prior to *Executive Jet,* the general rule concerning maritime torts had been that "the jurisdiction of the admiralty is exclusively dependent upon the locality of the act." 409 U.S. at 253, 93 S.Ct. at 497, *quoting from Thomas v. Lane,* 23 F.Cas. pp. 957, 960, No. 13,902 (C.C.Me.1813). But, as the Supreme Court noted, as early as 1850, admiralty scholars had suggested that maritime locality alone was insufficient basis for admiralty jurisdiction. In recent times some lower federal courts, including our own Sixth Circuit, in *Chapman v. City of Grosse Pointe Farms,* 385 F.2d 962 (1967), began to hold that a nexus with maritime commerce was an additional requirement for the invocation of admiralty jurisdiction.

Justice Stewart, for a unanimous court in *Executive Jet* held that locality alone was not a sufficient basis to invoke the admiralty jurisdiction of the Court. While the facts of the case involved an airplane crash, and the actual holding was so restricted, much of the opinion discusses the Court's dissatisfaction with the locality alone test as a basis for admiralty jurisdiction in all tort actions.

Professor Moore's scholarly treatise was cited frequently by Justice Stewart, and we agree with his interpretation of the *Executive Jet* opinion:

> "The opinion clearly seems to put to rest the idea that *locality alone* can ever provide the basis for admiralty jurisdiction unless specifically provided by Congress.
>
> \* \* \* \* \* \*
>
> The entire first part of the Supreme Court's opinion, looking in almost total measure to non-aviation cases, illustrates the Court's disillusion with the strict locality rule." 7A J. Moore, *Federal Practice, Admiralty* ¶ .325[3] (2d ed. 1975 Supp.)

In this Court's opinion, in order to invoke the admiralty jurisdiction, the libelants must establish a significant relationship to traditional maritime activity. The reasons for this requirement are explained in *Executive Jet,* and more specifically in the following passage from Professor Moore:

> "The only valid criterion of the admiralty jurisdiction is the relation of the matter—whether it be tortious or contractual in nature—to *maritime commerce.* . . . Location is often irrelevant. What is relevant and does justify the continued existence of separate maritime laws and procedures are the practical realities of the situation and the overriding goal of perpetuating the vitally important maritime industry. The maritime industry is still, to a large extent, transient, far-flung and fraught with perils. Those dealing with that industry—whether furnishing supplies, services, or shipping goods—are, consequently, entitled to remedies and defenses peculiarly fitted to such ventures and should not be subjected to the idiosyncrasies of each port's local law. Similarly, because of the perils of the industry, those employed to man and operate vessels and who are injured a result thereof are entitled to special and uniform laws especially designed to cover such occurrences. Such laws, not only assure the availability of a reasonably fair remedy to those connected or dealing with the maritime industry no matter where the injury or dispute may arise, but also give to all concerned—merchant, seaman and vessel owner—the ability to know in advance of the undertaking the rights and liabilities that will apply should some breach or disaster occur." 7A J. Moore, *Federal Practice, Admiralty* ¶ .325[5], pp. 3606–3607 (2d Ed. 1976).

As Justice Stewart noted:

> "The law of admiralty has evolved over many centuries, designed and molded to handle problems of vessels relegated to ply the waterways of the world, beyond whose shores they cannot go. That law deals with navigational rules—rules that govern the manner and direction those vessels may rightly move upon the waters. When a collision occurs or a ship founders at sea, the law of admiralty

looks to those rules to determine fault, liability, and all other questions that may arise from such a catastrophe. Through long experience, the law of the sea knows how to determine whether a particular ship is seaworthy, and it knows the nature of maintenance and cure. It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage." 409 U.S. at 269–270, 93 S.Ct. at 505.

■ It becomes apparent that the law of admiralty is specially designed for the shipping industry, not small pleasure boats. Professor Black, also cited in *Executive Jet,* pointed out that the mention of the "admiralty and maritime jurisdiction" in Article III of the Constitution demonstrated "a strong federal interest in the orderly and uniform judicial governance of the concerns of the maritime industry." Black, *Admiralty Jurisdiction: Critique and Suggestions,* 50 Col.L.Rev. 259, 262 (1950). After a stinging criticism of the strict locality rule, Professor Black proposed that actions for tortious injury should be subject to the admiralty jurisdiction when the criterion of "real and substantial relation to shipping" is met. Other scholars have joined in this analysis.[1]

■ Based on *Executive Jet,* and the scholars mentioned therein, the Court is of the opinion that a significant relationship to traditional maritime commerce is met only when the persons or events involved have some connection to the shipping industry. The Court fails to find such a relationship when two small non-commercial pleasure boats collide on a small land-locked lake wholly contained within the State of Tennessee. In these situations there is no need for a national uniformity of laws designed to provide special remedies and procedures to the shipping industry. The states pro-

vide adequate remedies and procedures for settlement of disputes arising from local, intra-state, small-boat accidents that have no connection with the maritime industry.

Plaintiff maintains that the Extension of Admiralty Jurisdiction Act of 1948[2] (hereinafter "the Act") overcomes the lack of a significant relationship to traditional maritime commerce. That Act was passed to avoid some of the more bizarre results of the strict locality rule, *e. g.,* where an injury caused by a ship was actually consummated on land and was thereby barred from the admiralty jurisdiction by the strict locality rule.[3] In essence the Act eliminated the strict locality rule for torts that occurred on land, but were, otherwise, properly subject to the admiralty jurisdiction. In contrast, *Executive Jet* held that location of the tort over navigable water alone was an insufficient basis upon which to base the admiralty jurisdiction. *Executive Jet* held that maritime jurisdiction was also dependent upon a significant relationship to maritime commerce. Thus, two elements were required for admiralty jurisdiction over actions for tortious injuries:

1. Location of the wrong over navigable waters.

2. Significant relation to traditional maritime commerce.

Since the Act specifically eliminated the first requirement, we see no reason to imply that the second requirement is also eliminated by the Act.

As Justice Stewart stated in *Executive Jet:*

"Apart from the difficulties involved in trying to apply the locality rule as the sole test of admiralty tort jurisdiction, another indictment of the test is to be found in the number of times the federal courts and the Congress, in the interest of justice, have had to create exceptions to

---

**1.** Stolz, *Pleasure Boating and Admiralty: Erie at Sea,* 51 Calif.L.Rev. 661 (1965). One treatise, however, calls for a maritime nexus only when the tort occurs on navigable and territorial waters of the states, as opposed to the high seas. 2 *Benedict on Admiralty* § 2, pp. 1–16 to 1–17 (7th Ed. 1975).

**2.** 46 U.S.C. § 740.

**3.** See 7A J. Moore, *Federal Practice, Admiralty* ¶ .325[4], pp. 3580–3581 (2d Ed. 1976).

it in the converse situation,—i. e., when the tort has no maritime locality but *does bear a relationship to maritime service, commerce or navigation.*" (Emphasis added) 409 U.S. at 259, 93 S.Ct. at 500.

In discussing examples of these exceptions to the strict locality rule, after mentioning the Jones Act and the doctrine of seaworthiness, Justice Stewart specifically referred to the Extension of Admiralty Jurisdiction Act, noting that "Congress, too, has extended admiralty jurisdiction *predicated on the relation of the wrong to maritime activities,* regardless of the locality of the tort." (Emphasis added) 409 U.S. at 260, 93 S.Ct. at 500.

Thus the Court reads *Executive Jet* as interpreting the Act to have eliminated *only* the requirement of locality on navigable waters, still leaving the maritime nexus requirement for admiralty jurisdiction over tort actions.

The facts alleged in the case at bar are not within the proper scope of the federal admiralty jurisdiction because of the lack of a significant relation to the maritime industry.

For the foregoing reasons, it is ORDERED that respondent's motion to dismiss for lack of jurisdiction be, and the same hereby is, granted.

Order accordingly.