**KWAK HYUNG ROK, Plaintiff,**

**v.**

**CONTINENTAL SEAFOODS, INC., a corporation, Nigerian National Shrimp Company, Ltd., and Quality Marine, Inc., a corporation, Defendants.**

**QUALITY MARINE, INC., a corporation, Defendant and Third-Party Plaintiff,**

**v.**

**EMPLOYERS CASUALTY COMPANY, a corporation, Third-Party Defendant.**

Civ. A. No. 78–68–T.

United States District Court,
S. D. Alabama, S. D.

Dec. 22, 1978.

Maurice A. Downing, Mobile, Ala., for plaintiff.

Alex F. Lankford, III and J. Hodge Alves, III, Mobile, Ala., for Nigerian Nat. Shrimp Co. and Continental Seafoods, Inc.

J. W. Goodloe, Jr., and Thomas E. Sharp, III, Mobile, Ala., for Quality Marine, Inc.

Robert H. Smith, Mobile, Ala., for Employers Cas. Co.

DANIEL HOLCOMBE THOMAS, District Judge.

## ORDER

This matter came on to be heard on October 27, 1978, on defendants' motion to dismiss. After oral argument the matter was taken under submission.

Quality Marine, an Alabama corporation with its principal place of business in Mobile, Alabama, had constructed a shrimp trawler, the OPURO # 4, for the Nigerian National Shrimp Co. (hereinafter Nigerian), a foreign corporation. While the vessel was still at Quality Marine's dock, Continental Seafoods, Inc. (hereinafter Continental), a New York corporation with its principal place of business in Seacaucus, New Jersey, took charge of readying the OPURO # 4 on behalf of Nigerian, for a voyage to Nigeria. Plaintiff, an employee of Nigerian and Captain of the OPURO # 4, was sent aboard the vessel to aid in the loading of the ship. During the loading process plaintiff was injured while using an allegedly defective winch.

The complaint, in two counts, seeks (a) damages against Nigerian and Continental under the Jones Act, 46 U.S.C. § 688, for negligence and under the general maritime law for the unseaworthiness of the vessel; and (b) damages against Quality Marine under the general maritime law for a maritime tort grounded on a theory of products liability. A jury trial is demanded and punitive damages are also sought. Each defendant has filed a motion to dismiss citing numerous grounds. The contentions of each defendant will be considered separately.

## CLAIMS AGAINST NIGERIAN

Nigerian filed a motion to dismiss on the grounds that the complaint fails to state a claim against Nigerian upon which relief can be granted. In the alternative Nigerian moves the court to decline jurisdiction on the grounds that this court is not a proper forum for the trial of this action under the doctrine of *Forum Non Conveniens.*

Nigerian contends that jurisdiction and the cause of action cannot be predicated on the Jones Act or general maritime law on the grounds that plaintiff is a foreign seaman, Nigerian is a foreign corporation, and the vessel is under the Nigerian flag.

Whether jurisdiction exists and whether a complaint states a cause of action are separate issues and should be treated accordingly. Plaintiff asserts a substantial claim that the Jones Act affords him a right of recovery for the negligence of his employer. "Such assertion alone is sufficient to empower the District Court to assume jurisdiction over the case and determine whether, in fact, the Act does provide the claimed rights." *Romero v. International Term. Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

Assuming jurisdiction this Court now turns to the question of whether the maritime law of the United States may be applied in an action involving an injury sustained in an American port by a foreign seaman employed by a foreign corporation aboard a foreign vessel. The issue before the court is a choice of law question. This court "must apply those principles of choice of law that are consonant with the needs of a general federal maritime law and with due recognition of our self-regarding respect for the relevant interests of foreign nations in the regulation of maritime commerce as part of the legitimate concerns of the international community." Id. at 382–83, 79 S.Ct. at 486.

In the instant case three nations can claim an interest with plaintiff's injury, (1) Nigeria because the vessel and Nigerian are Nigerian nationals; (2) South Korea because the injured seaman was a South Korean; (3) The United States because the alleged tortious conduct occurred and caused injury in American waters. We therefore review those factors which have been held to influence choice of law to govern a maritime tort claim. See *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970); *Romero, supra; Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953).

In *Lauritzen, supra*, a Danish seaman injured aboard a Danish vessel in Cuba brought suit for negligence under the Jones Act against the Danish shipowner. In holding that Danish law, not American law governed the claim, the Supreme Court considered the following seven factors, in order of decreasing importance: (1) Law of the flag; (2) Allegiance of the defendant shipowner; (3) Allegiance or domicile of the injured; (4) Law of the forum; (5) Inaccessibility of the foreign forum; (6) Place of the wrongful Act; (7) Place of contract.

While *Lauritzen* involved claims asserted only under the Jones Act the Supreme Court in *Romero* held that the "similarity in purpose and function of the Jones Act and the general maritime principles of compensation for personal injury, admit of no rational differentiation of treatment for choice of law purposes. (*Romero*, 358 U.S. at 382, 79 S.Ct. at 485) In *Romero*, the court citing *Lauritzen*, refused to apply American maritime law in an action against a Spanish shipowner, involving an injury sustained in an American port by Spanish seaman on board a Spanish vessel.

In *Rhoditis, supra*, the Supreme Court noted that the *Lauritzen* test was not a mechanical one nor was the list of seven factors exhaustive (*Rhoditis*, 398 U.S. at 308, 90 S.Ct. 1731). In applying the maritime law of the United States to an action involving injuries sustained in American territorial waters on a ship of Greek registry owned and operated by a Greek corporation, the Supreme Court held that in addition to the *Lauritzen* factors, the shipowner's base of operations was another important factor in determining whether the Jones Act is applicable. (Id. at 309, 90 S.Ct. 1731). Ninety-five percent of the stock of the Greek corporation which had its largest office in New York and another office in New Orleans was owned by a United States domiciliary who was a Greek citizen. Additionally, the income from the ship which operated between the United States and Middle East was from cargo either originating or terminating in the United States.

Since the facts in this case, as alleged in the pleadings, make it distinguishable from *Rhoditis*, the reasoning of *Lauritzen* and *Romero* preclude the application of the maritime law of the United States in the instant action against Nigerian.

## CLAIMS AGAINST CONTINENTAL

The complaint, although vague, attempts to state a claim against Continental in addition to Nigerian, for negligence and unseaworthiness under the Jones Act and the general maritime law. Continental argues that plaintiff has no cause of action since Continental was not the plaintiff's employer nor the owner, operator, or charterer of the vessel on which plaintiff was injured.

By the express terms of the Jones Act an employer-employee relationship is essential to recovery. *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949). The employer need not be the owner or operator of the vessel. *Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157 (5th Cir. 1972). Furthermore, the employment relationship may be implied from the facts. Under the borrowed servant doctrine, Restatement (second) of Agency §§ 220–227 (1957), the courts have recognized an employment relationship where an independent contractor has assumed enough of the incidents of an employer, such as the right to control an employee's work. *United States v. W. M. Webb, Inc.*, 397 U.S. 179, 90 S.Ct. 850, 25 L.Ed.2d 207 (1970).

That a seaman is a borrowed servant of one employer does not mean that he thereby ceases to be his immediate employer's servant. *Spinks v. Chevron Oil Co.*, 507 F.2d 216 (1975). In *Spinks*, the Fifth Circuit noted that forcing a seaman to speculate at his peril on whether the trial court ultimately will find him a borrowed employee of the shipowner or an employee of his immediate employer can result in defeating Jones Act rights (Id. at 225). The Court found nothing offensive in suing an immediate employer under the Act, or even both employers in the alternative. The defendants can sort out which between them will bear the final cost of recovery, either through common law indemnity or contribution principles. (Id.)

Although in the instant case, the complaint alleges that Nigerian was plaintiff's immediate employer, the complaint also suggests that plaintiff was the borrowed servant of Continental and entitled to assert a Jones Act claim.

With respect to the claims for unseaworthiness if Continental had operated, managed and controlled the OPURO # 4, it could be held liable for the vessel's unseaworthiness. Although the management and control is implied in the pleadings it is not expressly alleged and this Court hesitates to read more into the complaint than it actually alleged. However, in the interest of judicial economy, plaintiff should be given leave to amend the complaint to support his claim for unseaworthiness or negligence of Continental independent of the employment relationship or operation and control, otherwise Continental's motion to dismiss the unseaworthiness claim is due to be granted.

CLAIMS AGAINST QUALITY MARINE

Quality Marine suggests that plaintiff is relying upon the Jones Act and since there is no employer-employee relationship between Quality Marine and plaintiff, there is insufficient grounds to state a cause of action. Although Quality Marine's contention is correct, a review of the complaint indicates that plaintiff is not suing under the Jones Act but rather plaintiff appears to be proceeding under the general maritime law on a theory of products liability. In this situation plaintiff has two alternate basis for jurisdiction. While plaintiff's claim cannot be justified under 28 U.S.C. § 1331 (suits arising under the Constitution or laws of the United States) *Romero*, supra, this court has jurisdiction of the claim *"pendent"* to its jurisdiction under the Jones Act. (Id. 358 U.S. at 380, 79 S.Ct. 468).

Jurisdiction may also be invoked under 28 U.S.C. § 1331 (diversity of citizenship). Quality Marine and Continental are of diverse citizenship from plaintiff. Since the Jones Act provides an independent basis of federal jurisdiction over the nondiverse Nigerian, the rule of complete diversity under *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1906) does not require dismissal of the claim against Quality Marine.

When jurisdiction is based on diversity of citizenship the pleader must allege the existence of both diversity of citizenship and the requisite amount in controversy. Although the requisite amount is alleged, Quality Marine argues that since the complaint does not allege the statutory place of incorporation or principal place of business of two of the defendants, the complaint must fail with respect to the jurisdictional requirement. Although Quality Marine's contention is well taken a review of the pleadings filed to date indicate that diversity of citizenship does exist. However, rather than take judicial notice of jurisdiction (See *George v. Douglas Aircraft Co.*, 332 F.2d 73 (2d Cir. 1964), cert. denied, 379 U.S. 904, 85 S.Ct. 193, 13 L.Ed.2d 177) the better practice would be to allow the plaintiff to amend the complaint to conform with this opinion. Official Form 2(a) (Fed.R.Civ.P.) illustrates the pleading of jurisdiction in diversity cases as follows:

(a) Jurisdiction founded on diversity of citizenship and amount.

Plaintiff is a [citizen of the State of Connecticut][2] [corporation incorporated

under the laws of the State of Connecticut having its principal place of business in the State of Connecticut] and defendant is a corporation incorporated under the laws of the State of New York having its principal place of business in a State other than the State of Connecticut. The matter in controversy exceeds, exclusive of interest and costs, the sum of ten thousand dollars.

## MOTION TO STRIKE JURY DEMAND

 Nigerian has moved for an order striking the plaintiff's demand for a jury trial. As discussed in the foregoing opinion, plaintiff has amply demonstrated his right to maintain an action for personal injuries on the law side of the Federal Court and is entitled to a trial by jury on both his law claims and general maritime claims. *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963); U.S. Const. Amend. VII.

## MOTION TO STRIKE PUNITIVE DAMAGES

Punitive damages are recoverable only in circumstances of extreme, outrageous conduct and are not recoverable merely upon a showing of negligence or an actionable tort. Punitive damages may be recovered where a defendant's conduct is accompanied by wanton, willful or malicious acts or the equivalent thereof. The complaint only alleges that defendants were negligent and that the vessel was unseaworthy. Since there are no allegations which would support a recovery of punitive damages, plaintiff's prayer for punitive damages should be stricken.

It is therefore ORDERED, ADJUDGED and DECREED that:

(1) Nigerian's motion to dismiss is hereby GRANTED.

(2) Continental's motion to dismiss is hereby DENIED.

(3) Quality Marine's motion to dismiss is hereby DENIED.

(4) Motion to strike the demand for a jury trial is DENIED.

(5) Motion to strike the prayer for punitive damages is hereby GRANTED.

It is FURTHER ORDERED, ADJUDGED and DECREED that plaintiff is allowed 30 days to amend the complaint in accordance with this opinion.