**Zenzeal MONTGOMERY, as Special Administratrix of the Estate of Robert D. Montgomery, Deceased, Plaintiff,**

v.

**Dr. John HARROLD, Defendant and Third-Party-Plaintiff,**

v.

**CHRIS-CRAFT CORPORATION, Third-Party-Defendant.**

No. 871905.

United States District Court, E. D. Michigan, Southern Division.

May 25, 1979.

Rosenbaum, Bloom, Kaufman, Appel & Moses by Leslie D. Bloom, Detroit, Mich., for plaintiff.

Richard A. Harvey, Detroit, Mich., for defendant and third-party-plaintiff.

No appearance for third-party-defendant.

## MEMORANDUM OPINION

FEIKENS, District Judge.

### Facts

Plaintiff filed a complaint in this court which alleges that on October 18, 1976 Plaintiff's decedent (her late husband) was aboard a pleasure craft owned by one John Harrold. Harrold had loaned him the boat and placed him in charge of it. It was, at all times material, moored to a dock in the Detroit River. He was accompanied by a female companion. While aboard, he was allegedly overcome with lethal fumes and died, apparently of asphyxiation. His companion is not mentioned in this suit, though she apparently sustained some injury. She has filed suit in the Wayne County Circuit Court against the marina (where the boat was moored) and, among others, the plaintiff herein.[1]

### Jurisdiction

■ 1. The jurisdictional basis for this case is not clear from the complaint. The "Boating Act of 1958" is mentioned in paragraph 3. This appears to be a reference to the Federal Boating Safety Act of 1958, 46 U.S.C. §§ 527–527h. That act was repealed by Pub.L. 92–75 §§ 41(a)(2) & (4), Aug. 10, 1971, 85 Stat. 228. However, much of the 1958 act is now covered by 46 U.S.C. § 1451 et seq., the Federal Boat Safety Act of 1971. But, in any event, it is not clear what that act has to do with this suit. The 1971 Act is basically designed to encourage boat safety through the establishment of a comprehensive regulatory scheme and by providing criminal and civil penalties for unsafe boat operation. 46 U.S.C. §§ 1451, 1461(c) & (d), 1483 & 1484. The Act does not appear to provide remedies in the form of civil actions by private citizens, cf. 46 U.S.C. § 1485 (provides for petition by Attorney General for enforcement) and Parsell v. Shell Oil Co., 421 F.Supp. 1275

---

1. Ms. Williams apparently claims physical and emotional injuries flowing from the trauma of her companion's death.

(D.Conn.1976),[2] although specific provisions may provide a relevant standard by which to gauge the defendant boat owner's duty of care. *Glenview Park Dist. v. Melhus,* 540 F.2d 1321, 1327 & n. 6 (7th Cir. 1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977).

2. The complaint at paragraph 14 also mentions the Jones Act, 46 U.S.C. § 688. However, that act is not relevant to this lawsuit. The Jones Act is designed to allow seamen to recover from their employers for work related injuries. "Only seamen are entitled to benefit from the provisions of the Jones Act . . ." 7A, J. Moore, *Moore's Federal Practice* (2d Ed.), ¶ 325[1] & n. 1. "By the express terms of the Jones Act an employer-employee relationship is essential to recovery. *Cosmopolitan Shipping Co. v. McAllister,* 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949)." *Kwak Hyung Rok v. Continental Seafoods, Inc.,* 462 F.Supp. 894, 897 (D.Ala.1978). Thus, that Act provides no basis for federal jurisdiction.

3. In paragraph 11 of the complaint, the doctrine of "seaworthiness" is invoked. It may be that the plaintiff is using this as a shorthand reference to the boat owner's duty to his invitees to keep the boat safe. If so, then the reference has only an incidental relation to the maritime law, being instead a reference to the standard of care prevailing among the boat-owning segment of the general population. If, however, plaintiff intends to rely on the seaworthiness doctrine as it is applied as a term of art in maritime law, she misunderstands it.

The seaworthiness doctrine states generally that if a vessel is "unseaworthy" and an injury to a seaman proximately results therefrom, the owner of the vessel is liable almost without fault to the injured party. *Edynak v. Atlantic Shipping Inc.,* 562 F.2d 215, 222 (3d Cir. 1977)[3]; 2 M. Norris, *The Law of Maritime Personal Injuries* § 319 (3d Ed. 1975). But, to recover for unseaworthiness, one must be a seaman, or be performing seaman's duties as part of one's employment. *Edynak, supra,* at 222. The doctrine has never been applied to guests. Thus, this doctrine provides no basis for jurisdiction.

4. The last possible basis of jurisdiction is asserted in paragraph 14. It appears to be a claim of jurisdiction under the common law of admiralty. However, merely because a claim purports to sound in the general maritime law, this does not necessarily bring it within the admiralty jurisdiction. 2 Am.Jur.2d, Admiralty, §§ 5 & 11.

In *Romero v. International Terminal Operation Co.,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), the Supreme Court stated that although the corpus of Admiralty law is federal in that it is derived by implication from Article III, the assertion of a maritime right does not automatically confer federal question jurisdiction. 28 U.S.C. § 1331. The Court reasoned that this would be "a destructive oversimplification of the highly intricate interplay of the States and the National Government in their regulation of maritime commerce." *Id.,* at 373, 79 S.Ct. at 480. There is no federal question admiralty jurisdiction. *Parsell, supra,* at 1277 ("Section 1331 clearly does not provide federal question jurisdiction for an admiralty claim," *citing Romero, supra.* ) *Cf. Eastern Steel & Metal Co. v. Hartford Fire Insurance Co.,* 376 F.Supp. 763, 765 (D.Conn.1974).

However, even though there is no federal question admiralty jurisdiction *per se,* under 28 U.S.C. § 1333, the federal courts have jurisdiction over "maritime torts." *Cf. Roberts v. Grammer,* 432 F.Supp. 16 note (E.D.Tenn.1977). The question is: "is the tort alleged here a 'maritime tort?'" I conclude it is not.

Until the Supreme Court case of *Executive Jet Aviation v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the test for subject matter admiralty jurisdiction was almost exclusively the location

---

**2.** *Aff'd,* 573 F.2d 1289 (1977)

**3.** *Cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978)

of the tort. If the injury occurred on navigable waters, then it was almost certainly a maritime tort. 2 Am.Jur.2d, Admiralty, §§ 47, 81 & 82. However, in *Executive Jet,* the Supreme Court added another element, citing with approval the Sixth Circuit case *Chapman v. City of Grosse Pointe Farms,* 385 F.2d 962 (6th Cir. 1967). That new element is some significant relationship between the injury suffered and the traditional concerns of maritime law: navigation or commerce on navigable waters. *Executive Jet,* 409 U.S. at 256, 93 S.Ct. 493.

Many cases have developed this requirement with the result that admiralty jurisdiction has been considerably narrowed in its application to pleasure craft related injuries. One case has held that no injury sustained in the operation of a pleasure craft is cognizable under maritime law. *King v. Harris-Joyner & Co.,* 384 F.Supp. 1231 (E.D.Va.1974), *rev'd sub nom. Richards v. Blake Builders Supply, Inc.,* 528 F.2d 745 (4th Cir. 1975). Many courts have said that the principles of maritime law should apply only in those areas which first generated the need for a unique body of such rules. *Crosson v. Vance,* 484 F.2d 840 (4th Cir. 1973); *Kayfetz v. Walker,* 404 F.Supp. 75, 76 (D.Conn.1975); *Gilmore v. Witschorek,* 411 F.Supp. 491, 493 (E.D.Ill.1976); C. Gilmore & C. Black, *The Law of Admiralty,* §§ 1–10 (2d Ed. 1975); Stolz, *Pleasure Boating and Admiralty,* 51 Cal.L.Rev. 661, 665 (1973).

■ To implement this policy, the case of *Kelly v. Smith,* 485 F.2d 520 (5th Cir. 1973) *cert. denied* 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974), states several criteria used to determine if a claim has a maritime nexus. These criteria have been widely followed. They are: (1) The functions and roles of the parties involved; (2) the types of vehicles and instrumentalities involved; (3) the causation and type of the injury; (4) traditional concepts of the role of admiralty. 485 F.2d at 525.

In the instant case, the parties to the suit (Montgomery's decedent and Harrold) were apparently only social friends. It appears one lent the other his pleasure craft, not for use as a boat *qua* boat, but merely as a place of recreation.

The vehicle involved is a craft designed for navigable waters, but it was moored and does not appear ever to have left the dock at any time material hereto. The instrumentality of the injury is allegedly lethal fumes, but this is not unique to boats. The same injury could have occurred on land.

Likewise, the type of injury, death, is not unique to the sea, nor is its source. It would be different if death was by drowning or shipwreck or some other uniquely maritime cause.

As to the traditional concepts of admiralty, I cannot see how they apply here. There was no navigation or trade involved. The vessel was purely a pleasure craft; it did not leave the dock. The fact that plaintiff's decedent was killed on the water was purely fortuitous. None of the needs that generate the law of admiralty's special rules of procedure and substance would be served by their application to this case. Thus, I hold plaintiff has not alleged a maritime cause of action.

■ The view put forth by Professor Moore has much merit and succinctly states my reasons for dismissal:

"The only valid criterion of the admiralty jurisdiction is the relation of the matter—whether it be tortious or contractual in nature—to *maritime commerce.* . . Location is often irrelevant. What is relevant and does justify the continued existence of separate maritime laws and procedures are the practical realities of the situation and the overriding goal of perpetuating the vitally important maritime industry. The maritime industry is still, to a large extent, transient, far-flung and fraught with perils. Those dealing with that industry—whether furnishing supplies, services, or shipping goods—are, consequently, entitled to remedies and defenses peculiarly fitted to such ventures and should not be subjected to the idiosyncrasies of each port's local law. Similarly, because of the perils

of the industry, those employed to man and operate vessels and who are injured as a result thereof are entitled to special and uniform laws especially designed to cover such occurrences. Such laws, not only assure the availability of a reasonably fair remedy to those connected or dealing with the maritime industry no matter where the injury or dispute may arise, but also give to all concerned—merchant, seaman and vessel owner—the ability to know in advance of the undertaking the rights and liabilities that will apply should some breach or disaster occur." 7A J. Moore, *Federal Practice,* Admiralty Paragraph .325[5], pp. 3606–3607 (2d Ed. 1976).

(quoted in *Roberts v. Grammer, supra,* 432 F.Supp. at 17)

In conclusion, I note that the defendant's motion for dismissal was made not on the theory I have outlined, but because a similar state court action involving many of the same parties was pending. Ordinarily that is not a reason to dismiss a federal case. *Colorado River Water Cons. Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). However, given my conclusions stated earlier, I need not reach that issue.

An appropriate order is entered herewith.