April Summer HALL b/n/f Georgia Hall Eversole

v.

Glenn ROBINSON.

Civ. No. 3–80–125.

United States District Court,
E. D. Tennessee, N. D.

June 30, 1980.

Robert E. Pryor, Donald R. Sproles, Knoxville, Tenn., for plaintiff.

Glenn Robinson, pro se.

**124**

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action for alleged wrongful death arising out of a boating accident which occurred on Norris Lake on June 9, 1979. It is the theory of the plaintiff that the defendant was negligent in operating his boat at a speed too fast for the conditions existing at the time of the accident; in failing properly to steer and to control his boat; and in failing to keep a proper lookout ahead. It is also the theory of plaintiff that defendant operated his boat in a reckless manner and in violation of T.C.A. § 70–2213(a). Plaintiff says that since the accident occurred on navigable waters on Norris Lake, the case falls within the admiralty jurisdiction of this Court.

Defendant was without an attorney, and gave as his reason for representing himself that he did not have sufficient funds to engage one. Defendant denies all allegations of negligence or willful conduct. He says in layman's language that he was operating his boat in a safe and prudent manner when suddenly and without warning the boat struck a submerged object and went out of control, throwing plaintiff's decedent overboard. He says that the accident was unavoidable and that he was faced with a sudden emergency at the time. He claims further that plaintiff's decedent assumed the risk of injury and that she was contributorily negligent in failing to wear a life preserver in spite of numerous requests from defendant to do so.

The issues, as formulated in the pre-trial order, are:

(1) Did the defendant violate any duty owed to plaintiff's decedent; if so, was such violation the proximate cause of the accident and resulting death?

(2) Was plaintiff's decedent guilty of contributory negligence or assumption of risk that would bar a recovery?

(3) Does admiralty and maritime jurisdiction apply in this accident?

(4) If plaintiff is entitled to recover, what is the amount?

■ There was no proof on the question of whether the case was subject to maritime law. The Court, however, takes judicial knowledge that Norris Lake is navigable water and that under ordinary circumstances admiralty law would apply. *See Executive Jet Aviation v. Cleveland*, 409 U.S. 249, 253, 93 S.Ct. 493, 497, 34 L.Ed.2d 454 (1972). Here, however, it is apparent from the record that the parties were engaged in pleasure–boating at the time of the accident. Therefore, this Court does not have admiralty jurisdiction. *Roberts v. Grammer*, 432 F.Supp. 16 (E.D.Tenn.1977). The case is properly before this Court based on diversity of citizenship, and principles of common law negligence apply.

■ The case was first heard by the Court on June 25, 1980, at which time some six eye-witnesses testified, as well as the defendant. Three were introduced by each side. The proof is uncontroverted that while the jet boat which the defendant was driving was traveling on open water at a speed of from 35 to 45 miles per hour, it suddenly "swapped ends", i. e. made a sudden 180° turn within the length of the boat itself. Although counsel for plaintiff argued that 35 to 45 miles per hour was excessive, there is no evidence in the record to support this argument.

None of the six witnesses testified to facts that would establish that the defendant was negligent as a matter of law. There was no evidence to explain the accident other than defendant's theory that he struck some object in the water. There was no evidence that it would be possible for the driver of a jet boat, which is going 35 to 45 miles per hour, to cause the boat to spin in the manner explained by the various witnesses. One witness testified that the spinning of the boat didn't look like a turn. It is undisputed that at times debris could be found in the lake. There was evidence that the man in charge of a bass fishing tournament, which was going on at the time, had checked the water for debris and found none. However, between the time of the check and the time of the accident some twenty fishing boats had passed through

the area, any number of which could have left debris which could have remained undetected.

Although defendant testified on June 25, he did not testify that he hit an object in the water, nor did he testify about his efforts to persuade the decedent to wear a life preserver. The defendant stated in substance on the first day of trial that the reason he did not testify that he ran into an obstruction in the lake was because he had set forth in both his answer and in his proposed findings of fact and conclusions of law that this was the cause of the accident, and that he assumed it was accepted by all parties that this was defendant's contention. Since defendant was not represented by counsel and knew nothing about the rules of evidence, the Court deemed it proper to reopen the case so as to give the defendant an opportunity to testify on this subject. Accordingly, the case was reopened and additional evidence taken on June 27.

Plaintiff's counsel say that the defendant purposely evaded pre–trial discovery and moved for a default judgment on that ground. While the Court denied the motion, the record does indicate that defendant failed to appear for a scheduled deposition and could not be located to be served with a subpoena. Thus, after the case was reopened, but before more evidence was heard, the Court deemed it proper to permit counsel to depose the defendant, as well as the eyewitness he brought along to testify. Counsel took full advantage of this opportunity.

Defendant presented two witnesses, himself and one Homer Smith. Responding to questions propounded by the Court, defendant testified that he was operating his jet boat in a roughly straight line at about 35 miles per hour, that he heard a thump like the sound of the boat hitting a solid object, and that suddenly the boat did a 180° turn, causing the decedent to be thrown overboard, and him to be thrown about the boat. He testified that after the accident there were scratches on the underside of the boat which he was almost positive had not been

there before. He also said that though he had asked the decedent several times to wear a life jacket, she had refused because she wanted to get a tan. He could not say whether he was wearing a life jacket at the time of the accident.

Homer Smith testified that he was the operator of Lakeview Boat Dock, some 12 miles down the lake shore from the scene of the accident, and that he was personally acquainted with the defendant. At the time of the incident, he was at Hickory Star Boat Dock with his two cousins working on his boat. He says that he heard defendant's engine and then a loud thump, whereupon he looked up and saw defendant's boat do an abrupt 180° turn over the water and come to a stop. Smith testified that he and his companions got into Smith's boat and went to the scene. On the way they spotted a partially submerged barrel about 150–200 feet from the defendant's boat. When they arrived at the scene, they were still unaware that the victim had been thrown from the boat, but there were other boats in the immediate area. Having ascertained that the defendant was not seriously injured, they returned to the dock. On the way back, they punctured a hole in the barrel and waited for it to sink.

Plaintiff presented two witnesses on rebuttal. Pam Reed, an eye-witness, testified that defendant's boat made a loud noise and left the shoreline at a fast rate of speed. She did not hear any thumping noise, nor did she see a barrel in the water. After she helped deceased into the boat after the accident to be taken for medical assistance, she remained in the area of defendant's boat for a short time to rest. She testified that she saw no one approach defendant's boat after the victim was removed from the scene.

James Lowery testified as an expert boat operator. He stated that he had many years of experience in operating boats on Norris Lake at and near the place where the accident occurred. He was familiar with jet boats of the kind defendant was using at the time of the accident. He stated that they were fast moving boats and

that he had used them in the maneuvers on the lake for a period of many years. Lowery testified that it was possible for the driver of such a boat moving at 30–35 miles per hour to cause the boat to "swap ends," that is, make such a 180° turn, within the length of the boat, and that he had made such a maneuver himself as a stunt. He testified, however, that he had never seen a passenger thrown from a boat as a result of such a maneuver. He was of the opinion that the boat could have not been maneuvered safely in the manner explained by defendant.

Most all of this testimony was speculative and its admission as evidence was questionable, but, as the trier of fact, the Court chose to hear the evidence and weigh it accordingly.

This case involves a question of fact. The decisive issue is whether or not plaintiff has proved by a preponderance of the evidence that the defendant was negligent on the occasion and that such negligence was the proximate cause of the accident.

Counsel for the plaintiff seriously questioned the credibility of defendant's witnesses. He stated that they were all friends of the defendant and that he believed that they had concocted their stories in an effort to help their friend. Though their arguments were vigorous, this Court cannot bring itself to the conclusion that these witnesses perjured themselves. This accident, like most accidents, was very unfortunate in that a young woman, twenty-five years of age, lost her life while engaged in recreational pursuits. However, in the opinion of the Court, plaintiff failed to carry the burden of proof by showing actionable fault on the part of the defendant.

Accordingly, it is ORDERED that judgment be entered for the defendant, and that this case be, and the same hereby is, dismissed.

Order Accordingly.