SOERIS J. JALIMSINGH, Appellant, v WORLD WIDE MARKETERS, LTD., et al., Respondents.

First Department, June 11, 1981

### APPEARANCES OF COUNSEL

*Fred R. Profeta, Jr.* and *Henry Isaacson* for appellant.

*Robert B. Fougner* of counsel *(Hill, Betts & Nash,* attorneys), for respondents.

### OPINION OF THE COURT

FEIN, J.

This is a maritime personal injury action under the Jones Act (US Code, tit 46, § 688). Plaintiff appeals from so much of the order and judgment as granted summary judgment dismissing his Jones Act cause of action against the corporate defendants.

Defendant Surinam American Industries, Ltd. (SAIL)

operated a fleet of fishing vessels out of the South American port of Surinam's capital, Paramaribo. Most of these vessels were nominally owned by individuals who affiliated with SAIL for purposes of processing their fishing catch through the fleet. Although the independent owners bore the expense of repairing their own vessels, and they paid their crews' wages, the services of maintenance, fueling and piloting were provided with personnel supplied by SAIL, and those personnel received their wages by checks from SAIL, albeit drawn on accounts maintained by the vessel owners with SAIL.

The vessel in question, the American-registered *Joan of Arc*, was registered and insured by Robert J. Testen (Testen), as owner. Testen is the only defendant over whom personal jurisdiction has never been acquired. It is alleged that he never did file necessary forms with the United States Coast Guard when the vessel ultimately sank in 1974.

The issue is whether plaintiff was employed by SAIL or by Testen at the time he sustained the injuries of which he complains.

Plaintiff was a capitan with the fleet, and as such he piloted a number of these independently owned vessels. He was hired by SAIL's dock manager, from whom he took his assignment orders. Plaintiff picked up his checks from the SAIL office, regardless of whose vessel he was piloting at the time.

In December, 1973, plaintiff requested to be placed on stand-by status for personal reasons. In such status he was able to restrict his duties to piloting vessels around the Suriname River, in the immediate vicinity of the fleet's dock, for nonharvesting purposes. On February 2, 1974 SAIL's maintenance supervisor directed plaintiff to pilot the *Joan of Arc* some two miles to a beach across the river for routine repairs to the hull. To perform the repairs, plaintiff took along two carpenters who were paid on the same basis as plaintiff, i.e., they were paid by SAIL through Testen's account. It was while the vessel lay listing on the beach at low tide that plaintiff was injured falling off an inboard wooden portable ladder leading down to the engine

room. The alleged negligence is based on the assertions that the ladder was not properly secured, that it had no protective railings, that the area was poorly lighted because the bulb was missing from the socket, and that the vessel would not have been listing to begin with had the safer method of drydocking rather than beaching been used for the repairs.

With the repairs done and the tide in, the carpenters managed to return the vessel and its injured captain safely to port, at which time SAIL's maintenance supervisor sent plaintiff to the SAIL office to see the "company doctor". Defendants insist that it was Testen who sent plaintiff to SAIL's "company doctor".

Plaintiff was subsequently treated by an internist, and he was compensated for this expense at SAIL's office, although defendants again insist that the funds came from Testen's account with SAIL.

The Jones Act provides a remedy for a seaman against his negligent employer *(Moragne v States Mar. Lines*, 398 US 375, 394; *Panama R. R. Co. v Johnson*, 264 US 375, 387-388). An employer-employee relationship is thus essential to such recovery *(Spinks v Chevron Oil Co.*, 507 F2d 216, 224; *Mahramas v American Export Isbrandtsen Lines*, 475 F2d 165, 170). However, the employer need not be the owner or operator of the vessel at the time of the accident *(Barrios v Louisiana Constr. Materials Co.*, 465 F2d 1157, 1164-1166).

The record reveals a sharp factual dispute as to who paid plaintiff's wages, who hired him, who directed him, who assigned him to this particular job and who paid his medical expenses. Defendants rely heavily on the deposition of Testen, named but not served as a defendant in this action. There is clearly a factual issue not amenable to summary judgment. Defendants' insistence that the only party liable under the Jones Act happens to be the only defendant not amenable to personal jurisdiction merely emphasizes the necessity of a trial to explore fully the employment relationship.

Although it has been held that "under the Jones Act,

only one person, firm, or corporation can be sued as employer" *(Cosmopolitan Shipping Co. v McAllister,* 337 US 783, 791), this obviously does not preclude an inquiry as to whether one entity or another is indeed the Jones Act employer *(Spinks v Chevron Oil Co.,* 507 F2d, at pp 224-225).

Defendants argue that at the very least plaintiff was Testen's "borrowed servant" at the time of the accident, thus making Testen the borrowing employer who is solely liable under the Jones Act. While a maritime employee may become a borrowed servant in the course of his employment, that does not necessarily mean that he thereby ceases to be his immediate employer's servant under the Jones Act *(Spinks v Chevron Oil Co.,* 507 F2d, at p 224).

Plaintiff here took the prudent course of naming SAIL and Testen, *inter alia,* as parties defendant, for it is not the injured party who should have to make the determination of Jones Act liability as between his regular employer and a borrowing master. Pleading in the alternative is proper *(Kwak Hyung Rok v Continental Seafoods,* 462 F Supp 894, 898, aff'd 614 F2d 292). A number of factors go into the determination as to whether or not an individual is a borrowed servant, the most decisive of which would be "some type of agreement, written or verbal, formal or informal, between the general employer and the temporary employer evidencing an intention to create that relationship." *(Dugas v Pelican Constr. Co.,* 481 F2d 773, 778, cert den *sub nom. Union Oil Co. of Cal. v Dugas,* 414 US 1093.) Whether that or any other factor is present here to indicate that Testen and not SAIL was plaintiff's general employer or that by agreement Testen assumed control and direction over plaintiff's activities in place of SAIL, thus relieving SAIL of liability for plaintiff's injury, is a triable issue *(Guidry v South La. Contrs.,* 614 F2d 447, 455), inappropriate for summary disposition on papers.

Enough is shown to raise a triable issue as to whether SAIL or Testen was plaintiff's employer.

The judgment of Supreme Court, New York County, entered October 31, 1979, should be modified on the law and the facts to the extent of reversing and vacating the dismissal with costs and disbursements of plaintiff's Jones

Act cause of action against defendant Surinam American Industries, Ltd., and otherwise affirmed without costs. Plaintiff's appeal from the order of Supreme Court, New York County (NADEL, J.), entered October 29, 1979, should be dismissed without costs and without disbursements, that order having been subsumed in the judgment reviewed on this appeal.

BIRNS, J. P., ROSS, CARRO and LYNCH, JJ., concur.

Judgment, Supreme Court, New York County, entered on October 31, 1979, modified, on the law and the facts to the extent of reversing and vacating the dismissal of plaintiff's Jones Act cause of action against defendant Surinam American Industries, Ltd., with $75 costs and disbursements of this appeal payable by said defendant to plaintiff and the judgment is otherwise affirmed, without costs and without disbursements. Appeal from order of said court entered on October 29, 1979 is dismissed without costs and without disbursements, as having been subsumed in the judgment.