In the Matter of the Complaint of Kevin BROWN, dba S. K. Marine, as Owner of 1980 23 Foot Correct Craft Fish Nautique, for Exoneration From or Limitation of Liability.

Civ. A. No. C 81–2576.

United States District Court, N. D. Ohio, E. D.

April 19, 1982.

Jeffrey D. Fincun, Cleveland, Ohio, for plaintiff.

Michael R. Kube, Cleveland, Ohio, for claimant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Pending before the Court is claimant Edwin J. Smith's Motion to Dismiss this action, which seeks exoneration from, or limitation of, liability under the provisions of the Shipowners' Limitation of Liability Act, 46 U.S.C. § 181 et seq. ("Act").

For the reasons set forth below, the Motion to Dismiss, treated as a motion for summary judgment, Fed.R.Civ.P. 12(b), is denied.

### I.

#### A.

The relevant facts in this case are not in dispute and may be stated very simply. A boat owned by Kevin Brown ("Plaintiff") collided with a boat owned by Edwin Smith ("Claimant"), while both boats were involved in pleasure boating on Lake Erie, part of the navigable waters of the United States. At the time, Kevin Brown was not on board his boat. As a result of the collision, the wife of Edwin Smith was killed and both boats sustained some damage. Plaintiff Brown commenced this action to limit his liability, under 46 U.S.C. § 183, to the value of his interest in his boat immediately after the collision.

#### B.

Edwin Smith moved to dismiss this action, on the ground that neither the admiralty jurisdiction of the federal courts, nor the Shipowners' Limitation of Liability Act, can be invoked where the vessels involved are pleasure craft, engaged in pleasure boating. Smith argues that admiralty jurisdiction, as well as limitation of liability under the Act, can be predicated only on commercial maritime activity occurring upon the navigable waters of the United States.

Much logic, and good sound policy reasons, support Claimant Smith's argument and, were we writing on a clean slate, this Court might be inclined to accept it. However, in view of the long line of precedent to the contrary, this Court does not consider itself justified in deviating from settled case law, and is constrained to agree with the court in *Richards v. Blake Builders Supply, Inc.*, 528 F.2d 745, at 746 (4th Cir. 1975), which concluded that ". . . admiralty jurisdiction is present, though we think the jurisdiction should be limited to exclude such cases as these".

## II.

### A.

Title 1 U.S.C. § 3 defines a vessel to include every description of water craft used as a means of transportation on water. Title 46 U.S.C. § 183(a) allows the owner of *any vessel* to seek a limitation of his liability to the "value of the interest of such owner in such vessel, and her freight then pending". The amount to which liability may be limited is modified in 46 U.S.C. § 183(b)–(e) in the case of seagoing vessels where loss of life or bodily injury is involved; however, pleasure yachts are specifically excluded from the operation of § 183(b)–(e), but not from § 183(a), by § 183(f). Since, if a pleasure yacht were not a vessel, and hence excluded from the operation of § 183(a), it would be unnecessary to exclude it from § 183(b)–(e), it is obvious that a pleasure yacht *is* a vessel for the purposes of § 183(a). This conclusion, based on the plain language of the Act, is buttressed by the history of congressional amendments to, and consequent judicial interpretations of, the Act. See *Petition of Porter*, 272 F.Supp. 282 (S.D.Tex.1967). *Cf.* 46 U.S.C. § 188, providing that § 183 shall apply to all vessels used on lakes or rivers or in inland navigation.

### B.

In *Feige v. Hurley*, 89 F.2d 575 (6th Cir. 1937), the Court of Appeals held that a pleasure boat was a vessel within the meaning of § 183(a). That case involved a collision on the Ohio River between a boat and a canoe, both of which were at the time engaged in pleasure boating, and the Court of Appeals upheld a limitation of liability under the Act. This Court is bound by a pertinent decision of the Court of Appeals for the Sixth Circuit, even if it finds what it considers more persuasive authority in other circuits, *Timmreck v. United States*, 577 F.2d 372 (6th Cir. 1978), reversed on other grounds, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), where such decision has not been overruled by the Supreme Court, *Ithaca College v. NLRB*, 623 F.2d 224 (2d Cir. 1980), *cert. denied*, 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980).

In at least three cases, the Supreme Court has treated pleasure boats as within admiralty jurisdiction, without a suggestion of any doubt about the matter, *Levinson v. Deupree*, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953); *Coryell v. Phipps*, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943); *Just v. Chambers*, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941), the last two involving limitation of liability actions.

Numerous other courts have also held that the admiralty jurisdiction of the federal courts extends to the operation of small pleasure boats engaged in non-commercial activities in navigable waters, see, *e.g., St. Hilaire Moye v. Henderson*, 496 F.2d 973 (8th Cir. 1974), *cert. denied*, 419 U.S. 884, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974), and that the owner of a pleasure boat, engaged in non-commercial activities in navigable waters, is entitled to the protection of the Act. See, *e.g., Petition of Porter, supra.*

### III.

The Claimant places primary reliance on the Supreme Court decision in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), dicta in a large number of cases, and the views of certain text writers in the field. This Court agrees that *Executive Jet* is unquestionably controlling in this matter, but cannot give that decision the expansive reading urged by Claimant Smith.

### A.

In *Executive Jet, supra*, the Court held that, for admiralty jurisdiction to exist, the alleged wrong must bear a significant relationship to traditional maritime activity. Such traditional maritime activity, the Court pointed out, includes "maritime service, commerce, *or navigation*", 409 U.S. at 259, 93 S.Ct. at 500, on navigable waters. *Cf. Chapman v. City of Grosse Pointe*, 385 F.2d 962, at 966 (6th Cir. 1967), requiring a relationship between the alleged wrong and "some maritime service, navigation, or commerce".

It seems self evident that two boats, regardless of their intended use, purpose, size or activity, are engaged in traditional maritime activity when a collision between them occurs on navigable waters. *Richardson v. Foremost Insurance Co.*, 641 F.2d 314 (5th Cir.), *cert. granted*, —— U.S. ——, 102 S.Ct. 88, 70 L.Ed.2d 81 (1981). This is because boats, regardless of their size, purpose, or activity, are governed by the same "Rules of the Road" as the largest seagoing vessel when such boats are traversing navigable waters. *Richardson v. Foremost Insurance Co., supra.* The Court in *Executive Jet* implicitly recognized this when it pointed out that, when a collision between vessels occurs, the law of admiralty looks to the navigational rules to determine fault, liability, and all other questions that may arise from such a catastrophe; 409 U.S. at 270, 93 S.Ct. at 505.

Furthermore, a pleasure yacht, regardless of its intended use, purpose, size or activity is a vessel for the purposes of the Act. *Feige v. Hurley, supra.*

Thus, where the alleged wrong arose out of a collision between two pleasure yachts navigating for pleasure on Lake Erie, admiralty jurisdiction exists, and the Act applies.

This conclusion is in line with the decisions of a number of courts which have considered the effect of *Executive Jet* on pleasure boating and concluded that admiralty jurisdiction exists, or the Act applies, in cases similar to the one at bar. *Richardson v. Foremost Insurance Co.*, 641 F.2d 314 (5th Cir.), *cert. granted*, —— U.S. ——, 102 S.Ct. 88, 70 L.Ed.2d 81 (1981); *Kelly v. United States*, 531 F.2d 1144 (2d Cir. 1976); *Richards v. Blake Builders Supply, Inc.*, 528 F.2d 745 (4th Cir. 1975); *St. Hilaire Moye v. Henderson*, 496 F.2d 973 (8th Cir. 1974); *Otto v. Alper*, 489 F.Supp. 953 (D.Del.1980); *Armour v. Gradler*, 448 F.Supp. 741 (W.D. Pa.1978). As the Court in *Richards, supra*, at 748 concluded, we are not

... free to read into the Supreme Court's holding in *Executive Jet Aviation* a release from what seems to have been the settled course of decision in the Su-

preme Court as well as in the lower federal courts.

**B.**

Claimant cites numerous cases in support of his position. Most of those cases are plainly distinguishable. *Roberts v. Grammer*, 432 F.Supp. 16 (E.D.Tenn.1977), *Chapman v. U. S.*, 575 F.2d 147 (7th Cir. 1976), *Adams v. Montana Power Co.*, 528 F.2d 437 (9th Cir. 1975), and *In re Stephens*, 341 F.Supp. 1404 (N.D.Ga.1965), did not involve navigable waters. *Marroni v. Matey*, 492 F.Supp. 340 (E.D.Pa.1980), *Webster v. Roberts*, 417 F.Supp. 346 (E.D.Tenn.1976), and *Crosson v. Vance*, 484 F.2d 840 (4th Cir. 1973), involved water skiing accidents, which, *Executive Jet* teaches, are outside the admiralty jurisdiction. *King v. Harris-Joyner Co.*, 384 F.Supp. 1231 (E.D.Va.1974), was reversed in *Richards v. Blake Builders Supply, Inc., supra.* *Clinton Board of Park Comr's v. Claussen*, 410 F.Supp. 320 (S.D. Iowa 1976), and *Montgomery v. Harrold*, 473 F.Supp. 61 (E.D.Mich.1979), involve peculiar fact patterns in which there was no "navigation" as the term is commonly understood. Other cases are similarly distinguishable.

These cases, however, do echo the severe criticism levelled by the text writers at the application of the Act, and admiralty jurisdiction, to pleasure boating accidents where no commercial activities are involved.

**IV.**

Claimant Smith persuasively argues that the application of the Act to the facts in this case leads to an unjust result, and to a perversion of the original purpose of Congress in providing for limitation of liability of shipowners. It is not, however, the role of the judiciary to pass upon the wisdom of legislation, *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), nor to set aside a law, or carve an exception to it, simply because the Court considers it to be harsh or draconian, *Union*

*Electric v. EPA,* 427 U.S. 246, at 272, 96 S.Ct. 2518, at 2532, 49 L.Ed.2d 474 (1976).[1]

Furthermore, as noted by the Court in *Richardson, supra,* there is uniformity and certainty in the present rule that admiralty jurisdiction extends to all accidents occurring between surface vessels on navigable waters. The benefits derived from this certainty may override the policy considerations advanced by Claimant Smith in support of his position. A contrary holding would inject uncertainty not only as to the jurisdictional question, but also as to the applicable standards of conduct, which would plague litigants and the courts for years to come.

## V.

In *Feige v. Hurley, supra,* the Court of Appeals announced the law for this Circuit. This Court cannot say that that decision has been rendered non viable by the Supreme Court decision in *Executive Jet.* While there may be an exception to the binding effect which a ruling of the Court of Appeals has upon the district courts in this circuit in rare and exceptionally compelling circumstances, the better judicial practice appears to be to let that Court, which announced the decision in *Feige,* decide whether or not that case is currently good law, rather than have a district court undertake to do so.[2]

After careful consideration of all the issues raised by Claimant Smith in this matter, this Court is of the opinion that this decision involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal may materially advance the ultimate termination of the litigation. Claimant may thus seek appellate review of

this interlocutory order. 28 U.S.C. § 1292(b).

IT IS SO ORDERED.

---

1. As Justice Cardozo remarked in *Techt v. Hughes,* 229 N.Y. 222, 228–229, 128 N.E. 185 (1920):

   The wisdom or fairness of the statute, I make no attempt to vindicate. Our duty is done when we enforce the law as it is written.

2. A district court "should not wait for formal retraction in the face of changes plainly fore-

shadowed". Yet it is not "desirable for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant". *Spector Motor Service v. Walsh,* 139 F.2d 809, at 823 (2d Cir. 1944) (L. Hand, dissenting), vacated, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944).